[No. G015755. Fourth Dist., Div. Three. May 31, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH LUIS SURDI, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b) and 976.1, parts II and III of this opinion are not published, as they do not meet the standards for publication.

## COUNSEL

Handy Horiye, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SONENSHINE, Acting P. J.—Kenneth Luis Surdi was convicted of aggravated mayhem (Pen. Code,[2] § 205), torture (§ 206), kidnapping (§ 207, subd. (a)), attempted murder (§§ 664, 187), and conspiracy to commit second degree murder (§§ 182, subd. (a)(1), 187). He was sentenced to consecutive terms of 15 years to life and life on the conspiracy and mayhem counts, plus 10 years and 8 months for the attempted murder and kidnapping counts.[3] On appeal, he contends the court erred in (1) refusing his proffered duress instructions, (2) failing to instruct sua sponte on the defense of necessity, (3) failing to stay sentence on the attempted murder and kidnapping counts, and (4) imposing the upper term on the attempted murder count. We agree the attempted murder count must be stayed and modify the judgment accordingly. In all other respects, we affirm.

I

Surdi associated with a group known as the Family Mob (Mob). One evening, Surdi and other Mob members were partying at Victor Lomeli's house when Mob rival Ruben Sanchez was spotted walking down the street. Sanchez was confronted by Mob members and told to choose one of them to fight. He declined but nonetheless was hit in the face and beaten.

The Mob members returned to Lomeli's house and told him what happened. Lomeli, who had been drinking and was known to be violent when drunk, suggested the Mob should "go kick [Sanchez's] ass some more." They agreed, and although Surdi initially indicated he wanted to stay behind, he joined the others after Lomeli told him to.

The Mob beat Sanchez again and hauled him inside a van where Lomeli told Surdi to hold Sanchez down. Surdi was scared but strapped a seat belt around Sanchez's neck so Lomeli could continue stabbing Sanchez with a screwdriver. Eventually, they took Sanchez to a riverbed, where Surdi helped drag Sanchez to a dirt area.

When they realized Sanchez was still alive, Lomeli told Surdi to break his neck. Surdi said he did not know how, so Lomeli gave the screwdriver to Hector Alvarez, who stabbed Sanchez in the heart. Brandon Ortega then took a turn at stabbing, while Surdi kicked Sanchez. After the Mob abandoned

---

[2]All statutory references are to the Penal Code.

[3]The torture count was stayed pursuant to section 654.

Sanchez in a ravine, Lomeli admonished the group not to implicate each other and said they would have to "take care of" anyone who ratted.

Sanchez survived somehow but is permanently disabled and does not remember the incident. Surdi told police the Mob intended only to beat Sanchez, not kill him. At trial, Surdi maintained he acted out of fear of Lomeli. He said he did not want to get in the van, but Lomeli, who was holding a screwdriver, grabbed his arm and told him he could go home later.

## II, III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV

Surdi next submits separate punishments for attempted murder and kidnapping are prohibited under section 654.[5] The Attorney General agrees the attempted murder count must be stayed. (See *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 615-616 [233 Cal.Rptr. 645] [defendant cannot be punished for both conspiracy and target offense of conspiracy].) That leaves only the kidnapping count for discussion.[6]

Surdi avers the kidnapping was for the sole purpose of beating Sanchez, which encompassed both the mayhem and torture counts. And since the court stayed sentence on the torture count, it necessarily should have stayed the mayhem count because the two crimes were incident to a single object and based on the same acts. However, for reasons explained in *People* v. *Trotter* (1992) 7 Cal.App.4th 363 [8 Cal.Rptr.2d 648], we believe Surdi harbored multiple intents thereby rendering section 654 inapplicable. (See *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 817-819 [177 Cal.Rptr. 627] [kidnapping evincing multiple intents permits multiple punishment].)

In *Trotter*, the defendant was pursued by police after commandeering a taxi at gunpoint. During the freeway chase, the defendant fired three shots at the squad car behind him, the second shot coming about a minute after the

---

*See footnote 1, *ante*, page 685.

[5]That section provides in pertinent part as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one[.]"

[6]Staying the attempted murder count moots Surdi's claims regarding imposition of the upper term on that count.

first, and the third moments after the second. The issue we faced was whether he could be separately punished for each of the three assaults.

We started our analysis by examining *People* v. *Harrison* (1989) 48 Cal.3d 321 [256 Cal.Rptr. 401, 768 P.2d 1078], in which the Supreme Court found the defendant harbored separate intents to obtain gratification with each sexual penetration he committed. *Harrison* determined criminal acts committed pursuant to independent multiple objectives may be punished separately even if they share common acts or are part of an indivisible course of conduct. Finding "no reason to limit *Harrison*'s reasoning to sex crimes," we ruled, ". . . this was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.' [Citation.]" (*People* v. *Trotter, supra,* 7 Cal.App.4th at pp. 367-368.) Because each shot increased the defendant's culpability and evinced a separate intent to do violence against the pursuing officer, we determined the defendant could be separately punished for each assault. (*Id.* at p. 368.)[7]

Like *Trotter,* the offenses presently under review did not arise from a single volitional act. Rather, they were separated by considerable periods of time during which reflection was possible. Lomeli's initial stabbing attack was interrupted in the van to permit Surdi to strap down Sanchez with a seat belt. There was also a break in the action when the group stopped at a school and discussed whether to abandon Sanchez there. After ample time to consider their actions, the group resumed the attack while taking Sanchez to the riverbed, where Mob members took turns stabbing Sanchez until they thought he was dead.

The fact Surdi assisted *multiple* stabbing episodes, each of which evinced a *separate intent* to do violence, precludes application of section 654 with

[7]Our concurring colleague criticizes *Trotter* as an improper extension of *Harrison* to nonsex offenses. However, in *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611], the Supreme Court did not distinguish between sex and nonsex cases in its review of section 654. Instead, the court described *Trotter* and *Harrison* as decisions which "have narrowly interpreted the length of time the defendant had a specific objective, and thereby found similar but *consecutive* objectives permitting multiple punishment." (5 Cal.4th at pp. 1211-1212, original italics.) In addition, the court expressly approved both decisions. (*Id.* at p. 1216.) Thus, our concurring colleague's narrow reading of *Harrison* and contempt for *Trotter* are not shared by the Supreme Court. (See generally, *People* v. *Nichols* (1994) 29 Cal.App.4th 1651, 1656-1658 [35 Cal.Rptr.2d 478] [citing *Harrison* and *Trotter* in nonsex case].)

respect to the offenses encompassed within the episodes. Therefore, Surdi was properly punished for committing kidnapping and mayhem, despite the court's decision to stay the torture count.

The judgment is modified to stay sentence for the attempted murder (count 5) and as modified is affirmed in its entirety.

Crosby, J., concurred.

**WALLIN, J.,** Concurring.—I concur with the result and with the reasoning of the majority in parts I through III, but I am compelled to write separately concerning the Penal Code section 654[1] issue discussed in part IV. The majority relies on *People* v. *Trotter* (1992) 7 Cal.App.4th 363 [8 Cal.Rptr.2d 648], our court's decision in a multiple shooting case, for the proposition separate punishment was justified for the multiple stabbings here. (Maj. opn., *ante*, at pp. 688-689.) The trouble is that the issue presented is whether the trial court could sentence separately for the stabbings *and the kidnapping*.

And the trouble does not stop there. *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611], in which the Supreme Court reaffirmed the vitality of the intent and objective test used to determine whether the section applies,[2] has created a conundrum in determining proper application of the section.

*Latimer* expressly approved *People* v. *Trotter*, *supra*, 7 Cal.App.4th 363 (*People* v. *Latimer*, *supra*, 5 Cal.4th at p. 1216). *Trotter*'s analysis provides the basis for my colleagues' conclusion section 654 does not apply here because the acts "were separated by considerable periods of time during which reflection was possible." (Maj. opn., *ante*, at p. 689.) And, under *Trotter*'s reasoning they conclude each stabbing episode "evinced a separate intent to do violence." (Maj. opn., *ante*, at p. 689, italics omitted.) If one focuses on the stabbings and ignores the kidnapping, the result has some facial appeal. But the conundrum still exists.

In *Latimer*, the Supreme Court found section 654 applied to a kidnapping and a rape where the defendant drove the victim into the desert and raped her

---

[1]All statutory references are to the Penal Code. Section 654 provides in relevant part, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

[2]That test was announced in *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839] and directs that section 654 be applied where multiple acts give rise to separate crimes if they were perpetrated with the same intent and objective. (55 Cal.2d at p. 19.)

and there was no evidence of any purpose or objective for the kidnapping other than the rape. (*People* v. *Latimer, supra*, 5 Cal.4th at pp. 1216-1217.) Applying that reasoning here, what was the purpose of kidnapping Sanchez if not to stab him? A direct application of *Latimer* suggests section 654 applies, but according to my colleagues *Trotter*, expressly approved in *Latimer*, suggests it does not.

Which is "wrong"?[3] *Latimer* involved a traditional application of the intent and objective test; both crimes were committed pursuant to the same objective. (*People* v. *Latimer, supra*, 5 Cal.4th at pp. 1216-1217.) *Trotter* adopted an approach used previously only in cases involving multiple sex acts.

As the majority notes, our court in *Trotter* held the defendant could be punished separately for multiple shots fired at a pursuing police officer which occurred in less than a minute. (*People* v. *Trotter, supra*, 7 Cal.App.4th at pp. 366-368.) To do so, the court relied heavily on *People* v. *Harrison* (1989) 48 Cal.3d 321 [256 Cal.Rptr. 401, 768 P.2d 1078]. Examination of *Harrison* and its progenitor, *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], is necessary to expose the flaw in *Trotter*'s reasoning.

In *Perez* the Supreme Court determined section 654 does not prohibit separate punishment for rape, sodomy and two counts of oral copulation which occurred during the same encounter. (*People* v. *Perez, supra*, 23 Cal.3d at pp. 549, 553.) The court expressly limited its analysis to sex offenses.[4] (*Ibid.*) The defendant asserted the trial court properly found his sole intent and objective was to obtain sexual gratification. (*Id.* at p. 552.) The Supreme Court did not disturb this finding[5] but instead declined, as a matter of law, to apply the intent and objective test: "Such an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual

---

[3]The Supreme Court is never wrong in a stare decisis sense. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Savala* (1981) 116 Cal.App.3d 41, 58 [171 Cal.Rptr. 882].) I speak only of logical flaws, and only with appropriate humility.

[4]The court said: "Although certain general principles may be distilled from prior decisions on section 654, we do not attempt in this case to determine their proper application to other than sex offenses." (23 Cal.3d at p. 551.)

[5]Nor should it have. Whether there was more than one intent or objective is a question of fact for the trial court and will be upheld *if there is substantial evidence to support it.* (*People* v. *Ratcliff* (1990) 223 Cal.App.3d 1401, 1408 [273 Cal.Rptr. 253]; see also *People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]; *People* v. *Williams* (1992) 9 Cal.App.4th 1465, 1473 [12 Cal.Rptr.2d 243]; *People* v. *Goodall* (1982) 131 Cal.App.3d 129, 148 [182 Cal.Rptr. 243].)

gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. [Citation.] It would reward the defendant who has the greater criminal ambition with a lesser punishment. [Citation.] [¶] A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. We therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act. [Citations.]" (*Id.* at pp. 552-553.)

Two important conclusions must be noted: (1) *Perez*, by its express terms was intended to apply only to sex cases; and (2) it was decided not by using the intent and objective test, but by creating an exception to it. In this context the Supreme Court concluded section 654 did not apply to multiple sex offenses. In doing so it considered *People* v. *Greer* (1947) 30 Cal.2d 589 [184 P.2d 512], where the court had found section 654 applied to a lewd conduct charge consisting of removing the victim's underwear as a prelude to rape. (*People* v. *Perez, supra*, 23 Cal.3d at p. 553.) To distinguish *Greer*, the *Perez* court noted, "None of the sex offenses [in *Perez*] was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other." (*Id.* at pp. 553-554.)

*People* v. *Harrison, supra*, 48 Cal.3d 321 was merely a corollary of *Perez*. The defendant argued the *Perez* exception did not apply when the multiple offenses committed in sequence violated the same statute. (*Id.* at p. 336.) In rejecting that contention, the Supreme Court made a number of comments that our court reiterated in *People* v. *Trotter, supra*, 7 Cal.App.4th 363: " 'No purpose is to be served under section 654 by distinguishing between defendants based solely upon the type *or* sequence of their offenses. . . . [I]t is defendant's intent to commit a number of separate base criminal acts upon his victim, and not the precise code section under which he is thereafter convicted, which renders section 654 inapplicable.' [Citation.] . . . [¶] '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.' " (*Id.* at pp. 367-368, quoting *People* v. *Harrison, supra*, 48 Cal.3d at pp. 337-338.)[6]

In relying on these quotations, our court failed to acknowledge that *Harrison* gleaned these principles from *Perez*, which is "the touchstone in

[6]It is ironic, to say the least, that this court focused on *Harrison*'s "walk away" language in *Trotter*. Trotter was *fleeing* from his victim, the officer, when he committed his crimes. Each

determining how these general principles are to be applied *to sex offenses*" (*People* v. *Harrison, supra*, 48 Cal.3d at p. 336, italics added), and that *Perez* itself expressly limited its principles to sex offenses. Thus, our court was somewhat myopic when stating in *Trotter*, "[W]e see no reason to limit *Harrison*'s reasoning to sex crimes." (*People* v. *Trotter, supra*, 7 Cal.App.4th at p. 367.)

Indeed, another reason to limit *Harrison* is apparent: unless the assaults in *Trotter* are analytically identical to those in *Perez* and *Harrison* and distinct from other crimes, extending the *Perez* exception to *Trotter* leads to the exception swallowing the rule. Defendants who do multiple acts giving rise to multiple penal violations are almost always more culpable than those who do only a single act.[7]

Our court made another error in *Trotter*. We found that ". . . under the long recognized 'intent and objective' test, each shot evinced a separate intent to do violence just as each new and separate penetration in *Harrison* evinced a new and separate intent and objective." (*People* v. *Trotter, supra*, 7 Cal.App.4th at p. 368.) We erred by construing *Harrison* as a case "where the court allowed separate and consecutive punishment on the basis of defendant's *intent*."[8] (7 Cal.App.4th at p. 367.) *Harrison*, like *Perez*, eschewed the intent and objective test and applied the sex offense exception.[9]

And, our court erred as a matter of logic and common sense. As Trotter contended, his apparent intent was to dissuade a pursuing police officer from giving chase. The only things analytically distinct about each shot are the locations where the shots were fired and the number of misses which preceded them. To jury-rig separate intents or objectives, one would be

---

shot was to facilitate his getaway. The shots continued because the victim continued his pursuit. I do not suggest Trotter was less culpable because the officer chose to do his job, but the circumstances show the "walk away" test, if there is one, was inapt in *Trotter*.

[7]I will address the merits of doing away with the rule by means other than exceptions.

[8]That error infected the Supreme Court's characterization of *Trotter* as a separate objective case. (*People* v. *Latimer, supra*, 5 Cal.4th at pp. 1211-1212.)

[9]The majority points out that the *Latimer* court characterized *Harrison* and *Trotter* as applying the intent and objective test, and did not distinguish between sex and nonsex cases. (Maj. opn., *ante*, at p. 689, fn. 7.) I might easily just accept that fact and leave the matter at rest, but I continue to be troubled by this problem: if the Supreme Court's characterization of these cases is taken seriously and applied at face value, *Latimer* should have come out the other way. The Supreme Court would have "narrowly interpreted the length of time [Latimer] had [the] specific objective [to kidnap], and thereby found [the] similar but *consecutive* objective[] [to rape] permitting multiple punishment." (*People* v. *Latimer, supra*, 5 Cal.4th at pp. 1211-1212.) In other words, if the Supreme Court seriously intended its characterization of *Harrison* and *Trotter* to apply in the kidnapping context we have here, why did the court not apply it to Latimer's case to avoid the result it expressly found distasteful? (See *People* v. *Latimer, supra*, 5 Cal.4th at p. 1211.)

required to surmise Trotter first had an intent to shoot the officer at point A and then had a new intent to shoot him at point B, etc.[10] Alternatively, one could offer that after missing, Trotter's intent was a really, really, strong intent to shoot the officer, much stronger than the intents that preceded it. Nonsense.[11]

By expressly approving *Trotter*, at least on the multiple intent theory, the *Latimer* court not only created the conundrum I have discussed, but spawned mutant tests such as the one created in *Trotter* and applied here: the time for reflection test. (*People* v. *Trotter*, *supra*, 7 Cal.App.4th at p. 368; maj. opn., *ante*, at p. 689.) Although the test has some attractiveness as a circumstantial evidence tool for determining whether the defendant did entertain multiple objectives or intents, it should not be used as a benchmark. Not all defendants reflect even if they have the time.[12] And of those who do, not all will propagate a new objective.[13]

But worse than the analytical flaws in such a test is its potential to swallow up the intent and objective test. Nearly all criminals have time to reflect on their actions between crimes. Latimer certainly did during the drive out to the desert with his victim.

So why do I concur? Because it is time to do away with the intent and objective test and substitute one that adequately reflects the plain language of section 654 and its purpose:[14] a single act punishable under multiple criminal statutes may be punished only once. Multiple acts may be punished

---

[10]That approach might be called "the spatially sensitive intent and objective test."

[11]These comments notwithstanding, I disagree with my colleague's characterization of my attitude toward *Trotter* as "contempt." (Maj. opn., *ante*, at p. 689, fn. 7.) I simply think it is wrong.

[12]Indeed, if a significant percentage of them did reflect, we would have much less crime.

[13]The majority cites a case that falls prey to the trend of creating separate intents out of whole cloth, *People* v. *Nichols* (1994) 29 Cal.App.4th 1651 [35 Cal.Rptr.2d 478]. The Court of Appeal used *Harrison* and *Trotter* to justify a finding that the defendant's intent in kidnapping his victim was distinct from his intent in threatening him. The court said the former intent was to accomplish a robbery; the latter intent was to get away with it. (*Id.* at pp. 1656-1657.) Honest.

That reasoning supposes there are two classes of criminals: those who do crimes, and those who do crimes and want to get away with them. The distinction between those two classes is reminiscent of this passage from Carroll's Through the Looking Glass: "[The White King] '. . . And I haven't sent the two Messengers, either. They're both gone to the town. Just look along the road, and tell me if you see either of them.' [¶] 'I see nobody on the road,' said Alice. [¶] 'I only wish *I* had such eyes,' the King remarked in a fretful tone. 'To be able to see Nobody! And at that distance too! Why, it's as much as *I* can do to see real people, by this light!' " (As quoted in Dukeminier & Johanson, Family Wealth Transactions: Wills, Trusts, Future Interests, and Estate Planning (1972) p. 680, fn. 6.)

[14]The section's purpose is "to insure that a defendant's punishment [is] commensurate with his culpability. [Citation.]" (*People* v. *Perez*, *supra*, 23 Cal.3d at p. 552.)

separately unless to do so would render the punishment not commensurate with the defendant's culpability.

The test has advantages over the intent and objective test. It is true to the plain language of the statute, which refers to "an act." It is in accord with the section's purpose, but presumes that multiple punishment for multiple acts will be commensurate with culpability. It obviates the need for exceptions to[15] and artificial glosses on the intent and objective test. And, unlike the intent and objective test, it makes judicial determinations turn on matters of law, not matters of fact.[16]

The Supreme Court declined to abandon the intent and objective test in *Latimer*, reasoning the Legislature may have relied on the test when enacting penal sentencing laws. I see no danger in that regard. The one example the Supreme Court gave did not prove its point,[17] and I am unable to think of any others. And, abandoning a substantially unworkable court-created rule would certainly not constitute any slight on the Legislature.[18]

Applying the proposed new rule here yields the same result my colleagues reach, but uses a much simpler and analytically pure approach. The kidnapping was a separate act from the stabbings, and each stabbing was separate

---

[15]There are others besides the sex crime exception, for example, multiple victims of violent crimes (see *People* v. *Latimer, supra,* 5 Cal.4th at pp. 1211-1212) and multiple victims of burglaries in one commercial building (*People* v. *James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135]).

[16]Under the intent and objective test, the determination is initially a factual determination for the trial court which should be upheld if there is substantial evidence. Given the flexibility of that approach, two judges could make different findings on virtually the same evidence, render different sentences, and be upheld on appeal. That would certainly not render punishment commensurate with culpability.

[17]The court listed section 667.8, which provides a three-year enhancement when certain sexual offenses are facilitated by a kidnapping. The section was enacted to negate section 654's constraint on additional punishment for the kidnapping in those circumstances. (*People* v. *Latimer, supra,* 5 Cal.4th at p. 1215.) The court opined that "[d]ifficult questions would arise" if *Neal* were overruled, specifically whether punishment could be imposed for both the kidnapping and the kidnapping enhancement. (*Ibid.*) But under *In re Chapman* (1954) 43 Cal. 2d 385, 390 [273 P.2d 817], the answer is simple. The same act gives rise to both punishments and section 654 would apply by its own terms.

[18]The *Latimer* Court relied on *Hilton* v. *South Carolina Public Railways Comm'n* (1991) 502 U.S. 197 [116 L.Ed.2d 560, 112 S.Ct. 560] and *Quill Corp.* v. *North Dakota* (1992) 504 U.S. 298 [119 L.Ed.2d 91, 112 S.Ct. 1904] for the proposition stare decisis mandates deference to the Legislature to alter the statute. (*People* v. *Latimer, supra,* 5 Cal.4th at p. 1214.) But those cases involved clear-cut legislative decisions, federal preemption of railway worker injuries in the former case and the physical presence use tax rule in the latter. (*Hilton* v. *South Carolina Public Railways Comm'n, supra,* 502 U.S. at pp. 206-207 [116 L.Ed.2d at p. 567, 112 S.Ct. at p. 564]; *Quill Corp.* v. *North Dakota, supra,* 504 U.S. at pp. 318-319 [119 L.Ed.2d at p. 99, 112 S.Ct. at p. 1916].) The United States Supreme Court did not decide whether stare decisis prevails where, as here, the issues are complex, involve jurisprudential rather than societal questions, and courts are as well or better equipped than the Legislature to answer them.

from the others. The kidnapping undoubtedly increased the victim's terror and facilitated privacy for more stabbing. The stabbings, punctuated by breaks, increased the victim's injuries and suffering. Punishing for multiple acts under these circumstances was commensurate with culpability.

Nearly two years has passed since the Supreme Court decided *Latimer*. The Legislature has not acted, and I am not aware of pending legislation. Section 654 case law remains a morass of inconsistency and confusion. I most respectfully invite the Supreme Court to revisit the problem.