Filed 5/22/13  P. v. Marquez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GERALD PATRICK MARQUEZ,<br><br>Defendant and Appellant. | H038611<br><br>(Santa Cruz County<br><br>Super. Ct. No. F19488) |

Gerald Marquez appeals from a judgment entered upon his no contest plea to first-degree burglary (Pen. Code, § 459) and two counts of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a) (1)). On appeal, he contends that the court's imposition of separate punishments on the two assault counts violated Penal Code section 654.  We disagree and therefore affirm the judgment.

*Facts*

The facts are derived from the victim's preliminary hearing testimony on December 6, 2010.

Appellant and the victim were involved in an "on and off" dating relationship beginning in late 2009.  On a Friday in May 2010, appellant accused the victim of

1

"seeing other guys" and told her he did not want to see her anymore.  The following day, after coming home from a bar, she entered her house to find appellant standing in her kitchen.  She had not given appellant permission to enter her home.  Appellant looked "irritated, pissed," and asked "where the fuck you been."  When she approached him, appellant hit her on the face and she fell.  He then began to kick and stomp on her, from her face down to her legs, while repeatedly asking how she could "do this to [him]" by going out with other guys.

Eventually, the appellant stopped his assault to retrieve a text message that had appeared on the victim's phone.  After reading the text message and demanding to know who had sent her the message, appellant became "even madder" and resumed hitting and stomping on her.  After what seemed like an hour to an hour and a half, appellant stopped hitting her; she then she escaped to her bathroom and locked herself inside.

While the victim was inside the bathroom, appellant tried to force the door open. He told her, "[y]ou better let me in.  This is only going to get worse for you.  Just let me in. It's going to get worse."  Then it was quiet, and she believed he had left.  However, "the next thing [she] kn[e]w," he began pounding on the door to the bathroom. Eventually, he took the door off the hinges and it fell down on her.

At that point, the victim testified, appellant "picked me up and went to slam me into the mirror and I put my arm up . . . .  My elbow broke the mirror."  The impact cut her forearm.  Appellant then told the victim to take a shower and helped her into the bathtub.  At that point, she was no longer able to walk.  She was in the shower for "quite some time," during which she repeatedly lost and regained consciousness.  Appellant then helped the victim into her bed where she remained for the night. She was unable to move and in considerable pain, and she continued to pass in and out of consciousness.

For the next two days, the victim experienced shortness of breath, pain in her chest, and difficulty moving.  Appellant took her to her primary care physician, who told her to go to the emergency room.  The providers at the emergency room informed the

victim that her lungs had collapsed and were full of fluid. As a result of the beating, the victim's jaw was fractured, some of her teeth were chipped, and some of her fillings had fallen out. By the time of the preliminary hearing, which took place about seven months after the attack, the victim had a scar from where doctors had drained her lungs, a black mark on her face where appellant had stomped on it, and bruises on her arms and legs. She was still experiencing back pain and frequent headaches, and her jaw was "clicking."

*Procedural History*

Appellant was charged by information with two counts of assault by means of force likely to produce bodily injury, in violation of Penal Code section 245, subdivision (a)(1), and two counts of first degree burglary, in violation of Penal Code section 459.[1] Attached to each of the assault charges was an allegation that appellant had inflicted great bodily injury on the victim, within the meaning of section 12022.7. One of the burglary charges was dismissed under section 995. On August 18, 2011, appellant pleaded nolo contendere to the other burglary count and the two assault counts (counts one and three), and he admitted the enhancement allegation pertaining to the first assault. The court dismissed the remaining enhancement allegation.

On October 26, 2011, the trial court sentenced appellant to the upper term of four years in prison on the first assault count, plus four years for the great bodily injury enhancement. On the second assault count, the court imposed a concurrent term of four years and imposed the middle term of four years for the burglary but stayed that punishment under section 654. This appeal followed. [2]

*Discussion*

1. *Section 654*

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Defendant's failure to object during sentencing does not preclude this appeal because he did not agree to a specified sentence. (Cal. Rules of Court, rule 4.412 (b); *People v. Hester* (2000) 22 Cal.4th 290.)

The only issue on appeal is whether section 654 requires the concurrent term for the second assault count to be stayed. Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) It is accepted that "[w]hether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143; see also *People v. Andra* (2007) 156 Cal.App.4th 638, 640–641, *People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)

The purpose of section 654 "is to ensure that a defendant's punishment is commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.) Consistent with this principle, "[g]enerally, a person who violates the same statute multiple times is more culpable than a person who violates the statute only once." (*People v. Sanders* (2012) 55 Cal.4th 731, 742.) Moreover, "at some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and more sinister goal than mere successful commission of the original crime . . . [S]ection [654] cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191.)

The imposition of concurrent sentences is prohibited by section 654 "because the defendant is deemed to be subjected to the term of *both* sentences although they are served simultaneously." (*People v. Miller* (1977) 18 Cal.3d 873, 887.) Therefore, when section 654 applies, "the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited." (*Correa, supra,* 54 Cal.4th at p. 337.)

4

In determining whether section 654 applies to a particular case, a court will attempt to discern the defendant's objective and intent at the time he committed the criminal acts. The Supreme Court in *Neal v. State of California* (1960) 55 Cal.2d 11, recited the test, or "judicial gloss" (see *People v. Siko* (1988) 45 Cal.3d 820, 822), that was followed until June 2012[3]: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal, supra,* 55 Cal.2d at p. 19; see also *People v. Brown* (1958) 49 Cal.2d 577, 591.)

On the other hand, "[i]f [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) The trial court's determination that the defendant had more than one objective is factual and will be upheld on appeal if supported by substantial evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438*; People v. Lopez*, *supra*, 198 Cal.App.4th at p. 717.)

Additionally, even if the defendant harbors but one objective throughout the commission of the crimes, if his conduct is "divisible in time," it may be appropriate to impose multiple punishments for the violations. (*People v. Gaio* (2000) 81 Cal.App.4th

---

3  On June 21, 2012, the Supreme Court abandoned the *Neal* test in *People v. Correa*, *supra*, 54 Cal.4th 331. The court stated that contrary to precedent, it would follow "the language and purpose of section 654" which "counsel against applying it to bar multiple punishment for violations of the *same* provision of law." (*Id.* at pp. 340-341; see also *People v. Sanders*, *supra*, 55 Cal. 4th at p. 743 [simultaneous possession of two firearms can be punished separately].) However, the court noted that its ruling applies prospectively only. (*Correa, supra,* 54 Cal.4th at p. 344.) Therefore, we continue to follow the *Neal* test, as it was the law at the time the crime was committed.

919, 935; *People v. Beamon, supra*, 8 Cal.3d at p. 639, fn. 11.)  "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]"  (*People v. Gaio*, *supra*, 81 Cal.App.4th at p. 935.)

2.  *Appellant's Argument*

Appellant contends that section 654 applies to the sentencing on the two assault counts.  He insists that the beatings outside the bathroom (count one) and inside the bathroom (count three) were committed with a single objective—to harm the victim— and thus were parts of an indivisible course of conduct.   Consequently, appellant argues, section 654 prohibits multiple punishment and the concurrent term on count three should have been stayed.

Appellant cites *People v. Gaio*, *supra*, 81 Cal.App.4th 919 in order to distinguish it from the facts here.  In *Gaio*, the defendants were convicted of receiving and giving bribes over the course of several months and contended that the bribes were accomplished with the same intent and objective.  (*Gaio*, *supra*, 81 Cal.App.4th at p. 935.)  The *Gaio* court disagreed with the defendants' arguments that their consecutive sentences violated section 654.  (*Id.* at p. 936.)  The court concluded that because the bribes were carried out with different intents and objectives and because they were divisible in time, giving the defendants "an opportunity to reflect and to renew his or her intent before committing the next one," the imposition of separate sentences for each offense was appropriate.  (*Id.* at p. 935.)

Appellant also cites *People v. Lopez*, *supra,* 198 Cal.App.4th 698, again to distinguish it from the case at hand.  There, the trial court imposed concurrent sentences for two counts, using a stolen access card and petty theft of personal property, both items belonging to the same victim.  (*Id.* at p. 716.)  The defendant argued that the trial court should not have run those sentences concurrently, and that instead the stolen access card

charge should have been stayed. (*Id.* at pp. 716-717.) This court disagreed with the defendant because the trial court "could reasonably have concluded" that the objectives behind each crime were distinct. (*Id.* at p. 717.) Additionally, we held that the amount of time that passed in between the two offenses "was sufficient for him to reflect upon what he had already done . . . and what he was about to do." (*Id.* at p. 718.)

Appellant maintains that unlike *Gaio* and *Lopez*, "it cannot be said that appellant harbored any objective at any time during the commission of these offenses other than to inflict injury on [the victim]." Furthermore, "the assaults and the burglary were part of a continuous course of conduct. There was no appreciable break in the action such that it could be said appellant had an opportunity to reflect on his actions." Appellant argues that "it cannot be said that appellant had the opportunity to reflect and renew his intent."

3. *The Attorney General's Argument*

The Attorney General asks us to uphold the trial court's ruling, contending that the sentence was supported by substantial evidence and does not violate section 654. In doing so, she offers three arguments: that appellant had time to reflect between the two assaults, that the purpose of section 654 supports the trial court's determination, and that the appellant perpetrated the two assaults with different objectives.

Citing *People v. Surdi* (1995) 35 Cal.App.4th 685 and *People v. Kwok*, *supra*, 63 Cal.App.4th 1236 for the proposition that a division between incidents can justify multiple punishments, the Attorney General contends that a "sharp dividing line" between the two attacks formed when the victim ran into the bathroom. In her view, "there was a substantial pause between the first series of assaults and the second," and consistent with *Kwok* and *Surdi*, this pause allows for multiple punishment. Because "the trial court properly inferred that there was a period of cessation of hostility that divided the first assaults from the later assaults," she argues, the sentence should be upheld.

The Attorney General further contends that the purpose behind section 654 statute lends additional support to the trial court's finding. Citing *People v. Latimer, supra*, 5

Cal.4th 1203, she reminds us that "section 654 is intended to insure that a defendant's punishment will be commensurate with his culpability." She further argues that appellant's "second round of attacks plainly increased his culpability" because they are "easily distinguishable from his first battery of attacks in the kitchen."

The Attorney General also suggests that during appellant's second attack on the victim he showed a different intent and objective. Appellant's first attacks were "presumably out of outrage over his belief that he had discovered that she had been unfaithful. However, the second series of attacks seemed to show a different intent, that of teaching the victim that resistance to his will would be severely punished," as it "would only make it worse" for her.

4. *Analysis*

We agree with the Attorney General and thus find substantial evidence to support the trial court's imposition of concurrent sentences for the two assaults. Appellant suggests that "the most reasonable interpretation of these events is that appellant was quiet for a short period of time in an attempt to lull [the victim] into a false sense of security so that she would open the door." We are not convinced. The trial court could have reasonably concluded that the pause outside the bathroom door was evidence of something other than an attempt to lure the victim into a false sense of security.

If appellant was, in fact, attempting to instill in the victim a false sense of security, his ability to do so implies that he had time to reflect on his course of action; he was pausing to prepare for another attack on the victim and developing his strategy for how to do so. Moreover, the victim was behind a closed door, out of defendant's sight. There was silence outside the door. Appellant had an opportunity to refrain from further harming the victim and chose not to. Instead, he resumed his attack, breaking down the door and slamming her into a mirror.

Thus, there was substantial evidence from which the trial court could have determined that there was an "appreciable break" in appellant's conduct such that he had

8

an opportunity to reflect upon his actions.  This fact was sufficient to preclude the application of section 654 to the separate assaults on the victim.

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

9