Filed 5/7/21  P. v. Paredes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOEL ALBERTO PAREDES,<br><br>        Defendant and Appellant. | C090403<br><br>(Super. Ct. Nos. 19F2405,<br>13F7483) |

A jury found defendant Joel Alberto Paredes guilty of committing domestic violence and falsely imprisoning his ex-girlfriend during an argument.  On appeal, defendant contends the trial court erred when it declined to stay the sentence on his false imprisonment conviction, pursuant to Penal Code[1] section 654.  Finding no error, we affirm.

---

[1]        Undesignated statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Facts*

Defendant had an on-again-off-again relationship with J. T., the mother of his daughter.  One evening, after spending the day together, defendant and J. T. drank alcohol together at J. T.'s home and they began to argue.  Defendant took J. T.'s phone and put it in his pocket because he wanted to have a conversation with J. T.  He told J. T. he wanted to get married, but J. T. said she did not want to be with him.  Defendant became very upset.  J. T. wanted to end the argument and go to bed, but defendant boxed her in against the stove.  J. T. felt stressed and trapped.  She told defendant she felt claustrophobic and shoved defendant away, but defendant grabbed both her arms hard and held her against the stove.  He was drunk and panicky.  As defendant held J. T., he told her, "We're going to be together . . . me, you, and our daughter.  We're going to be a family finally."  "We're going to end the single mom cycle."  J. T. broke free, but two seconds later, defendant again grabbed J. T.'s arms and pushed her against the counter. He held her there for a couple of minutes as they continued to argue.  Defendant eventually let go of J. T.

J. T. threatened to call the police on defendant.  Defendant said that she could not call them because he still had her phone.  J. T. said she would just go to the neighbor's house and have them call the police.  Defendant said "something smart" like "Go ahead. Go to the neighbor's.  Have them do it."  They yelled at each other for several more minutes until J. T. opened the front door so she could run outside to the neighbor's house to call the police.  As she ran out the door, defendant grabbed J. T. by the arm, swung her back into the house, shut the door, and locked it.  Defendant boxed J. T. in on the couch and yelled at her for about 20 minutes.  Their argument eventually de-escalated.  They both went outside for a cigarette, and the police arrived.  J. T. had bruises on her arms, which were not present before defendant grabbed her.  J. T. estimated that approximately

2

10 minutes elapsed between the incident in the kitchen and her attempt to go to the neighbor's house to call the police.

## II

### *The Verdict And Sentencing*

At closing, the prosecution explained that the charges of false imprisonment and domestic violence arose from two possible acts:  first, when defendant grabbed and held J. T. in the kitchen, and second, when defendant grabbed her and pulled her into the house as she ran out the front door.  The jury was given a unanimity instruction and it found defendant guilty on both counts.  Defendant waived a jury trial on the special allegations that he committed two felonies while released from custody for another offense (§ 12022.1), which the trial court found to be true.

At sentencing, defense counsel argued that the trial court should apply section 654 to stay the sentence on one of the charges, contending both counts constituted a single act or a continuous course of conduct.  The trial court declined to apply section 654, finding that defendant had the same motive when he committed both crimes, but that the crimes constituted separate offenses.  It concluded that "the Court does not view that those are separate or the same offense as would be defined in and for purposes of concurrent sentencing under 654."

The trial court sentenced defendant to the midterm of three years for domestic violence and a consecutive eight-month term of one-third the midterm for false imprisonment.  The trial court stayed the enhancements.  It also sentenced defendant to a consecutive one-year term of one-third the midterm for the sale of a controlled substance in another case.  His aggregate sentence was four years and eight months.

## DISCUSSION

Defendant argues the trial court erred and violated his due process rights when it declined to stay the sentence for false imprisonment pursuant to section 654.  He contends that both crimes were part of an indivisible course of conduct in which

3

defendant had the sole objective of restraining J. T. so he could talk to her.  We are not persuaded.

Section 654, subdivision (a), provides in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  The statute does not prohibit multiple convictions for the same conduct, only multiple punishments.  (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.)  "In such a case, the proper procedure is to stay execution of sentence on one of the offenses."  (*Ibid.*)

"In any section 654 inquiry, the court must initially ascertain the defendant's objective and intent.  [Citation.]  ' "If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." '  [Citation.]  'Whether the defendant maintained multiple criminal objectives is determined from all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it.' "  (*People v. Tom* (2018) 22 Cal.App.5th 250, 260.)

A trial court "is vested with broad latitude" in making the factual determination whether section 654 applies.  (*People v. Vang* (2010) 184 Cal.App.4th 912, 915-916.)  We review the evidence in a light most favorable to the trial court's determination and presume in support of that determination the existence of every fact the trier of fact could reasonably have deduced from the evidence.  (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)  If the trial court reaches a correct outcome, we must affirm the judgment even if the trial court's rationale for its decision was incorrect.  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.)

Substantial evidence supports a finding that defendant had separate objectives when he grabbed and held J. T. in the kitchen and when he pulled J. T. inside and locked the door. The evidence shows that immediately prior to grabbing J. T. in the kitchen, defendant took her phone so that he would have her full attention. He told her they should be together as a family, and when she declined, he gripped her arms. As he held her, he continued to argue that she should marry him and that they should be a family. Thus, defendant's objective in the kitchen was to make J. T. listen to him and persuade her to take him back. However, in pulling J. T. back inside the house and locking her in, defendant intended to prevent J. T. from going to the neighbor's house to call the police. At that time, defendant had J. T.'s phone so she was unable to call the police herself. J. T. had threatened to go to the neighbor's house to call the police, and defendant taunted her to go ahead. But when she opened the door to do so, defendant grabbed her, forced her back inside, and locked her in, thus fulfilling his objective of preventing her from obtaining a phone from the neighbor's house to call the police.

Moreover, the two incidents occurred approximately 10 minutes apart. Separate violations against the same victim may be separately punished where there is time for reflection between the acts, even if they are part of an indivisible course of conduct. (See *People v. Louie* (2012) 203 Cal.App.4th 388, 399 [15 minutes between threat and arson gave the defendant the opportunity to reflect and renew his intent]; *People v. Surdi* (1995) 35 Cal.App.4th 685, 688-690 [multiple punishments for offenses that were part of an indivisible course of conduct, where offenses were "separated by considerable periods of time during which reflection was possible"].)

As defendant committed two divisible acts with distinct objectives, substantial evidence supports the trial court's decision to decline to apply section 654. The trial court's decision is supported even if its rationale behind its decision was not correct. Because we reject defendant's claim of error, we also reject his argument that he was denied adequate due process.

5

DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Renner, J.

6