Filed 8/15/25  P. v. Daranikone-Nunn  CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　v.<br><br>REID MACKEY DARANIKONE-NUNN,<br><br>　　　Defendant and Appellant. | C101044<br><br>(Super. Ct. No. STKCRFE20230007882) |

A jury convicted defendant Reid Mackey Daranikone-Nunn of assault with force likely to produce great bodily injury, defrauding an innkeeper, and vandalism.  On appeal defendant claims the trial court erred by failing to instruct the jury on self-defense and that his counsel was ineffective.  He also contends the trial court violated Penal Code[1] section 654's prohibition on multiple punishments.  The People argue the trial court had no duty to instruct on self-defense and defendant harbored multiple independent criminal objectives.  We affirm.

---

[1]    Further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of July 2023, defendant and two friends entered a diner after a night of drinking. Victim, C.Z., managed the night shift at the diner and C.V. worked as a server. C.Z. waited on defendant and his friends as they ordered food and drinks.

As C.Z. prepared the check for the table, defendant and his friends left the table and approached C.Z. C.Z. offered the check to the group but defendant ignored him and continued to the exit of the diner. Believing the group was attempting to leave without paying, C.Z. walked past the group toward the front door. Defendant's friends ran past C.Z. and left the diner. Defendant attempted to run past C.Z. too, pushing C.Z. with his elbow.

When C.Z. told defendant that there were cameras and that defendant needed to wait for the sheriff to arrive, defendant became "aggressive" and pushed C.Z. in the chest. Defendant continued to push C.Z. into the lobby of the diner. Defendant then attempted to knock down C.Z. by grabbing for C.Z.'s legs and then his waist. Defendant moved behind C.Z. and put him in a choke hold for approximately five minutes. As C.Z. struggled to get free from defendant's choke hold, he fell to his knees and held onto a door for support. Defendant continued to squeeze C.Z.'s neck until C.Z. heard a crack in his throat and lost consciousness for one to two seconds. While defendant choked the victim, C.V. called 911.

When C.Z. regained consciousness, defendant released the choke hold, and C.Z. told defendant to leave the diner. Defendant temporarily left and then returned two to three times and continued to attack C.Z., attempting to put C.Z.'s head through a window and kicking and punching him.

C.Z. told defendant he was free to leave, and defendant left the diner. C.Z. then closed the door. Defendant returned again and started pulling on the door, eventually breaking it off the hinges. Sheriff's deputies arrived shortly afterward and arrested

2

defendant, who was slurring his speech and appeared intoxicated. The deputies noticed C.Z. had marks and redness around his neck, abrasions on his lip and gums, blood on the back of his head, and a red mark below his elbow. Deputies also noticed the front door to the diner had been broken and was off the hinges.

The People filed an information charging defendant with assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)); criminal threats (§ 422, subd. (a)); vandalism of $400 or more (§ 594, subd. (b)(1)); and defrauding an innkeeper, a misdemeanor (§ 537, subd. (a)(1)). The People further alleged defendant personally inflicted great bodily injury (§ 12022.7), as to the assault and criminal threats counts. The information also alleged one circumstance in aggravation pursuant to California Rules of Court, rule 4.421(b)(2). During trial, the trial court amended count 3 to a misdemeanor and struck the great bodily injury enhancement as to count 2.

Defendant testified at trial. He admitted to having a "couple of beers" at a bar before going to the diner. After finishing his meal, defendant said his friends had already left. He walked to the door to look for his friends and saw C.Z. standing at the front door of the diner. Defendant testified C.Z. told him that he could not leave because he had not yet paid, so he told C.Z. that he was going to look for his friends who were supposed to pay the bill.

Defendant claimed that he tried to leave the diner but C.Z. blocked him from going out the door. Defendant denied punching, kicking, or putting C.Z. in a choke hold, and claimed he could not overpower C.Z. to leave the diner. Defendant testified that the only "body-to-body contact" he made with C.Z. was when he pushed C.Z. out of the way so that he could leave through the front door of the diner. He also testified that C.Z. caused the door to break off the hinges because of how C.Z. was holding onto it to prevent defendant from leaving. Defendant stated he never told C.Z. that he would kill him.

3

Prior to submitting the case to the jury, the parties discussed potential jury instructions. The prosecution asked the trial court not to give element five of the assault with force likely to produce great bodily injury instruction (CALCRIM No. 875), which relates to self-defense, because defendant testified that he did not punch, kick, or choke C.Z. The prosecution argued defendant could not have acted in self-defense if he did not punch, kick, or choke the victim.

Defense counsel argued because defendant testified that C.Z. pushed defendant first when both men had the "tussle at the door," which defendant admitted, the trial court should give the self-defense instruction in paragraph 5 of CALCRIM No. 875. The trial court asked defense counsel if he was referencing when defendant and C.Z. were "struggling between each other" when the hinge of the front door of the diner came off and defense counsel responded, "yes." The prosecution argued, "[t]he pushing is not the act that we're using to go after for the [assault count]. So he can admit to the pushing all he wants and that has nothing to do with the elements of the crime because the choking, the punching and the kicking are the assault likely to cause [great bodily injury]. So if he is saying he never did any of those things, then self-defense isn't an issue for this crime."

The trial court reminded the prosecution that it would still need to instruct the jury on the lesser included offense of simple assault and the prosecution agreed the self-defense instruction in paragraph 5 of CALCRIM No. 875 should remain in the jury instructions, as to simple assault only. The trial court agreed and added that self-defense would also be given in the instruction for simple assault (CALCRIM No. 915). Defense counsel concurred. The trial court instructed the jury on CALCRIM No. 875 and included paragraph 5, related to self-defense, as to the lesser included offense of simple assault.

The jury found defendant guilty of assault with force likely to produce great bodily injury, vandalism, and defrauding an innkeeper, and not guilty of criminal threats. It found the great bodily injury enhancement as to count 1 to be not true. The trial court

4

suspended imposition of sentence and placed defendant on formal probation for a period of two years with the condition that he serve eight months in county jail, as to count 1, six months as to count 3, and six months as to count 4 to be served concurrently, 120 days stayed.

Defendant filed a timely notice of appeal.

DISCUSSION

A. *Instructional Error*

Defendant claims the trial court erred in declining to instruct the jury on CALCRIM No. 3470, as to the assault with force likely to produce great bodily injury because it instructed the jury on CALCRIM No. 875, which contains paragraph 5 relating to self-defense. He asserts the trial court had a sua sponte duty to instruct the jury on CALCRIM No. 3470. The People argue the trial court had no such duty because defendant did not rely on self-defense and there was not substantial evidence of self-defense in the record.

We review an appeal claiming instructional error de novo. (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642.) The trial court has an affirmative duty to give, sua sponte, instructions on a defendant's theory of defense where " ' "it appears that the defendant is relying upon such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 424.) Substantial evidence means evidence from which a reasonable jury could find the defense applicable. (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

The bench notes to CALCRIM No. 3470 state: "The court has a sua sponte duty to instruct on a defense if there is substantial evidence supporting it and either the defendant is relying on it or it is not inconsistent with the defendant's theory of the case." (Boldface omitted.)

5

Defendant argues the "trial court's decision to instruct the jury on the bracketed portion of self-defense, as mandated by the instructional duty in CALCRIM No. 875, suggests that it considered the evidence presented at trial to be substantial enough to establish a self-defense claim," which would trigger the trial court's sua sponte duty to instruct on self-defense (CALCRIM No. 3470), as to the assault with force likely to cause great bodily injury count.

At trial, the parties agreed to keep paragraph five of CALCRIM No. 875, related to self-defense, as to the lesser offense of simple assault only, which the trial court gave. Defendant claims there is substantial evidence of self-defense despite defendant denying that he choked, punched, or kicked the victim. Defendant also asserts evidence of defendant pushing the victim at the front door is substantial evidence of self-defense. We disagree.

The trial court did not have a duty to issue a self-defense instruction because defendant did not rely on that defense, nor is there evidence of self-defense in the record. (CALCRIM No. 3470.) At trial, defendant did not rely on a self-defense theory on the assault with great bodily injury count because he denied he ever choked, punched, or kicked the victim. After arguing the merits of including a self-defense instruction, defense counsel concurred with the trial court that it was appropriate to include a self-defense instruction only as to the lesser included count of simple assault. The prosecution also expressly stated that any pushing that occurred between defendant and the victim was not the act that constituted assault with great bodily injury. Therefore, the only evidence to support a self-defense instruction was the alleged choking, punching, and kicking defendant claimed did not occur.

Because we conclude the trial court did not err in declining to give a self-defense instruction on the assault with force likely to cause great bodily harm count, we need not address defendant's claims alleging a violation of his constitutional rights or that his counsel was ineffective related to his claim of instructional error.

6

B.  *Section 654*

Defendant claims the trial court violated section 654 by sentencing him to concurrent terms on the assault, vandalism, and defrauding an innkeeper counts. Defendant argues there is substantial evidence defendant's intent was to either defraud or assault the night manager when the vandalism to the door occurred.  The People argue defendant's conduct included multiple intents and objectives, which made his offenses divisible acts.  We agree with the People.

Section 654, subdivision (a) states, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  Section 654 prohibits punishing a defendant more than once for a single criminal act or for an indivisible course of criminal conduct that reflects a single intent or objective.  (§ 654, subd. (a); *People v. Corpening* (2016) 2 Cal.5th 307, 311.)  " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' "  (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)  However, a defendant may be punished for each offense, "[i]f he [or she] entertained multiple criminal objectives which were independent of and not merely incidental to each other."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

"In the absence of any reference to . . . section 654 during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective."  (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626.)  We will uphold a trial court's implied finding that a defendant harbored a separate intent and objective for each offense if supported by substantial evidence.  (*Id.* at pp. 626-627; see also *People v. Lopez*, *supra*, 198 Cal.App.4th at p. 717.)  We review "the trial court's determination in the light most

favorable to the [People] and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) Here, substantial evidence supports the trial court's implied finding defendant entertained multiple criminal objectives.

First, defendant's actions of ignoring the night manager's attempts to deliver the check and defendant's attempt to leave the diner without paying demonstrated defendant's sole intent was to defraud. This occurred separate from and prior in time to the alleged vandalism.

Second, viewing the evidence in the light most favorable to the People, defendant's assaultive conduct toward C.Z. was not performed with the intent to defraud or to vandalize the door. It was reasonable for the trial court to conclude that choking the victim for five minutes until he lost consciousness, was not done with the intent to defraud because the assault occurred after C.Z. told defendant there were cameras in the diner and asked him to remain inside until law enforcement arrived. Defendant's fraudulent conduct was already complete. In addition, C.Z. told defendant to leave the diner after regaining consciousness and defendant returned two to three times to continue to attack C.Z. Similarly, it was reasonable for the court to find defendant's assaultive conduct of punching, choking and kicking C.Z. was not to vandalize—it occurred before defendant broke the door.

Finally, after assaulting C.Z., defendant left the diner and returned one more time, to vandalize the door by pulling it off its hinges. When defendant returned this last time, he had had time to reflect on his actions and form a new criminal intent. (See *People v. Surdi* (1995) 35 Cal.App.4th 685, 689; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [defendant resumed his criminal behavior "instead of taking advantage of an opportunity to walk away from the victim"].) Pulling the door off the hinges was a volitional act separate and apart from his efforts to defraud and assault the victim.

Because we conclude the trial court did not err, we do not address defendant's section 654 due process claim.

DISPOSITION

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
BOULWARE EURIE, Acting P. J.

/s/
FEINBERG, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.