[No. E006109. Fourth Dist., Div. Two. Sept. 19, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM RATCLIFF, Defendant and Appellant.

COUNSEL

Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Holly D. Wilkens, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**DABNEY, J.**—Following a jury trial, defendant, William Ratcliff, has appealed from his conviction on two counts of robbery with use of a firearm (Pen. Code, §§ 211, 1192.7, subd. (c)(8), 12022.5)[1] and one count of being an ex-felon in possession of a handgun (§ 12021), plus a true finding of a prior rape conviction (§ 667). Defendant was sentenced to an aggregate term of 11 years and 8 months. On appeal defendant contends: (1) the trial court committed prejudicial error in reading to the jury the entire ex-felon in possession of a handgun charge, thereby revealing the nature of defendant's prior conviction; and (2) under section 654, the trial court improperly sentenced defendant on the ex-felon in possession offense and then enhanced his sentence for the same firearm use. We have determined, however, that in light of defendant's refusal to stipulate to his ex-felon status reading the entire charge to the jury was not error under *People* v. *Valentine* (1986) 42 Cal.3d 170 [228 Cal.Rptr. 25, 720 P.2d 913] and did not violate federal due process standards. We have also concluded that the trial court properly sentenced defendant. We affirm the judgment in all respects.

### FACTS AND PROCEDURAL BACKGROUND

At about midnight on April 19, 1988, David Cubitt, a gas station employee in Riverside, was closing the station for the day when two men drove up in a car. Defendant asked to use the bathroom, and Cubitt agreed. Defendant emerged from the bathroom, drew a gun on Cubitt, and demanded his wallet. Cubitt complied. Defendant then asked Cubitt about the money collected at the gas station that day. Cubitt showed defendant that the paper money was inaccessible in the safe. Defendant settled for a roll of quarters, several rolls of pennies and a bag of coins. Immediately after defendant and his accomplice left, Cubitt called the police.

---

[1] All further references are to the Penal Code unless otherwise specified.

About an hour and a half later, Mynor Molina was working at a gas station in Riverside when defendant and his accomplice drove into the station, pointed a gun at Molina and demanded his wallet. Fearing for his life, Molina handed over his wallet, his watch and some papers. Defendant and his accomplice immediately drove away.

When defendant was arrested about one-half hour later, the police officer discovered a roll of pennies, paper money on the center console and a loaded handgun underneath the seat on the passenger side of defendant's automobile, the seat in which defendant was sitting. The officer also found Molina's watch in defendant's jacket pocket.

An information was filed charging defendant in counts I and II of robbery (§ 211) during which defendant was armed with and personally used a firearm (§§ 12022.5, 1192.7, subd. (c)(8)) and in count III of being an ex-felon in possession of a handgun (§ 12021). It was also alleged that defendant had a prior felony conviction (§ 667).

Defendant was arraigned and pled not guilty. The trial court granted defendant's motion to bifurcate trial of the prior conviction allegation, and a jury trial was conducted on the current charges. The jury found defendant guilty on all counts as charged. The same panel then tried the prior conviction allegation and found it to be true.

The court sentenced defendant to the middle term of three years on count I and consecutive one-third the middle terms of one year on count II and eight months on count III. It also imposed a two-year enhancement for the weapon-use allegation and an additional five years for the prior serious felony conviction.

Additional facts relevant to the issues raised in this appeal are set forth in the discussion.

DISCUSSION

I

■ Defendant contends that the trial court committed prejudicial error when it read to the jury the entire count III, alleging that defendant was an ex-felon in possession of a concealable firearm,[2] and also admitted evidence

---

[2] Count III reads as follows: "For a further and separate cause of action, being a different offense from but connected in its commission with the charges set forth in Counts I and II hereof, the District Attorney of the County of Riverside hereby accuses William Ratcliff of a violation of Section 12021 of the Penal Code, a felony, in that on or about April 19, 1988, in

of defendant's prior felony conviction, thereby improperly revealing to the jury the nature (rape) of defendant's prior conviction. Defendant argues that under *Valentine, supra*, 42 Cal.3d 170, evidence of the nature of his prior conviction should have been withheld even though he refused to stipulate to his ex-felon status. We conclude, however, that notwithstanding defendant's arguments to the contrary, neither the *Valentine* decision nor federal due process standards compels a conclusion that the trial court committed prejudicial error.

In *Valentine, supra*, 42 Cal.3d 170, the California Supreme Court held that under article I, section 28, subdivision (f) of the California Constitution,[3] the jury must be advised of the *fact* that defendant suffered a prior felony conviction even when a defendant who is charged with possession of a concealable firearm by an ex-felon offers to stipulate to the prior conviction. (*Id.*, at p. 177; *People* v. *Bennett* (1987) 188 Cal.App.3d 911, 914 [233 Cal.Rptr. 729]; *People* v. *Golston* (1986) 188 Cal.App.3d 346, 351 [232 Cal.Rptr. 788].) However, the *Valentine* court noted, when a defendant stipulates to his ex-felon status, "evidence of the *nature* of [defendant's] prior convictions still may and should be withheld from the jury, since such evidence is irrelevant to the ex-felon issue." (*Valentine, supra*, 42 Cal.3d at p. 173, original italics.)

*Valentine* is distinguishable from the facts of this case. In *Valentine*, even though the defendant stipulated to his ex-felon status, the trial court permitted the prosecutor to introduce evidence of the nature of his prior conviction, citing the constitutional requirement of proof in open court. The Supreme Court held that in this circumstance, the nature but not the fact of the defendant's ex-felon status should still be withheld from the jury. (*Valentine, supra*, 42 Cal.3d at pp. 173, 177-178.)

Here, defendant refused to follow his counsel's advice to stipulate to his prior conviction and the court granted defendant's motion to bifurcate the trial of the prior offense. However, the court read all of count III to the jury before the start of trial, and the jury was given documents from defendant's Los Angeles County Superior Court file, reflecting that defendant had been

---

the County of Riverside, State of California, he did wilfully and unlawfully own and have in his possession and under his custody and control a certain firearm, to wit, a Handgun, capable of being concealed upon the person, said defendant having been previously convicted of a felony, to wit, the crime of Rape on September 19, 1984[,] in the Superior Court of the State of California, in and for the County of Los Angeles in violation of Section 261(2) of the Penal Code."

[3] Article I, section 28, subdivision (f) of the California Constitution provides, in part: "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

convicted of rape and sentenced to the California Youth Authority. This was not error under a fair reading of *Valentine*.

Additionally, we have determined that defendant's due process rights were not violated by the trial court's reading of count III in its entirety and its admitting evidence concerning the nature of defendant's prior felony conviction. (*Spencer* v. *Texas* (1967) 385 U.S. 554, 559-569 [17 L.Ed.2d 606, 611-617, 87 S.Ct. 648]; *Valentine, supra,* 42 Cal.3d at pp. 180-181.) As the *Valentine* court noted, "Where ex-felon status is an element of an offense, it is hardly irrelevant in a fundamental constitutional sense. And the United States Supreme Court has acknowledged that states may have 'one-step' recidivist statutes which require proof to the guilt jury of priors bearing on punishment." (*Valentine, supra,* 42 Cal.3d at p. 180.) However, the *Valentine* court asserted, "Where proper limiting instructions are given, such [state recidivist statutes] do not offend federal due process. [Citations.]" (*Ibid.*) Further, the federal courts are split concerning "whether a trial court may or should exercise its discretion under the *rules of evidence* to withhold the *nature* of a prior felony from the jury where ex-felon status is an element of the offense. [Citations.]" (*Id.,* at p. 180, fn. 4, original italics.)

Here, because defendant refused to stipulate to his ex-felon status, the evidence was relevant, directly bearing on the issue of his guilt or innocence on count III. (See *Bennett, supra,* 188 Cal.App.3d at pp. 915-916, fn. 4; see also *Bruton* v. *United States* (1968) 391 U.S. 123, 131, fn. 6 [20 L.Ed.2d 476, 482, 88 S.Ct. 1620].) A review of the record reveals that a proper limiting instruction was given. The jury was instructed that its consideration of the evidence concerning the nature of the prior was limited to the "purpose of determining if it proves an element of Count III, which is an ex-felon in possession of a firearm," and that it was not to consider such evidence "to prove that [defendant] is a person of bad character or he has a disposition to commit crime" or "for any other purpose."

We conclude that the trial court did not err in reading count III in its entirety and admitting evidence of the nature of defendant's prior conviction.

II

The trial court sentenced defendant to an eight-month consecutive term on count III, the ex-felon in possession of a firearm conviction. The court also imposed a two-year enhancement for firearm use on count I and stayed a two-year enhancement for firearm use on count II. ■ Defendant now argues that the eight-month sentence imposed on count III must be

stayed under section 654 because the firearm use and being an ex-felon in possession of a concealable firearm were part of a continuous transaction. We disagree.

Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." ■ As noted by the court in *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], section 654 prohibits the court from imposing double punishment not only where there has been "but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction . . . ." (*Id.*, at p. 551.)

■ In determining whether the facts call for the application of section 654, the threshold inquiry is to determine the defendant's objective and intent. (*People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32].) The California Supreme Court in *Coleman* observed that " '. . . if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' [Citation.]" (*Ibid.*) Further, the question whether the defendant held multiple criminal objectives is one of fact for the trial court, and its finding will be upheld on appeal if there is any substantial evidence to support it. (*Ibid.*) For example, separate punishments for convictions of assault with a deadly weapon, a machine gun, (§§ 245, 12022.5) and possession of a machine gun (§ 12220) would not violate section 654, where there was "substantial evidence of possession antecedent to the assault. (Cf. *People* v. *Hopkins* (1985) 167 Cal.App.3d 110 . . . .)" (*People* v. *Simon* (1989) 208 Cal.App.3d 841, 852 [256 Cal.Rptr. 373].)

"The standard for applying section 654 in the circumstances of this case was restated in *People* v. *Venegas* (1970) 10 Cal.App.3d 814 . . . . 'Whether a violation of section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person, constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.' (*Id.*, at p. 821, citations

omitted.)" (*People* v. *Bradford* (1976) 17 Cal.3d 8, 22 [130 Cal.Rptr. 129, 549 P.2d 1225].)

In our view, the charge in count III presents a unique circumstance in the minefield of section 654 cases in that this charge involves an important policy consideration. All of the various weapons charges contained in the Dangerous Weapons Control Act (§ 12020 et seq.) are crimes for which any ordinary (nonfelon) citizen can be charged save one, i.e., section 12021. Unless a person has been convicted of a felony, he cannot be charged with a violation of that section.

To underscore just how important the distinction is between a section 12021 violation and other weapons violations, our Supreme Court stated: " 'Penal Code, section 12021, is part of the legislative scheme originally promulgated in 1917 (Stats. 1917, ch. 145, p. 221, § 1) and commonly known as the Dangerous Weapons Control Act . . . . The clear intent of the Legislature in adopting the weapons control act was to limit as far as possible the use of instruments commonly associated with criminal activity [citation] and, specifically, to "minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence." [Citation.]' [Citation.] The law presumes the danger is greater when the person possessing the concealable firearm has previously been convicted of felony, and the presumption is not impermissible. [Citation.]" (*People* v. *Bell* (1989) 49 Cal.3d 502, 544 [262 Cal.Rptr. 1, 778 P.2d 129].)

A release by honorable discharge from the Youth Authority does not invalidate the statute. (*Bell, supra,* 49 Cal.3d at p. 545.) Further, a felon, after release from prison and after living an honest and upright life and conducting himself with sobriety and industry, may petition the court for a certificate of rehabilitation under section 4852 et seq. However, even if an ex-felon obtains a certificate of rehabilitation or the Governor grants him a full pardon, restoring all his civil and political rights and privileges, he still may not carry a firearm if his previous felony involved the use of a dangerous weapon. (§§ 4852.17,[4] 4854[5]; *People* v. *Bell, supra,* 49 Cal.3d at p. 545.)

---

[4] Section 4852.17 provides in part: "Whenever a person is granted a full and unconditional pardon by the Governor, based upon a certificate of rehabilitation, the pardon shall entitle the person to exercise thereafter all civil and political rights of citizenship, including but not limited to: (1) the right to vote; (2) the right to own, possess, and keep any type of firearm that may lawfully be owned and possessed by other citizens; except that this right shall not be restored, and Sections 12001 and 12021 shall apply, if the person was ever convicted of a felony involving the use of a dangerous weapon."

[5] Section 4854 provides: "In the granting of a pardon to a person, the Governor may provide that the person is entitled to exercise the right to own, possess and keep any type of firearm that may lawfully be owned and possessed by other citizens; except that this right

In this circumstance, even the Governor, vested with pardoning power by the Constitution, cannot restore an ex-felon's privilege to carry a firearm. (*Ibid.*) Nor does section 1203.4[6] offer relief for such an individual so that he might carry a firearm. (*Ibid.*) In other words, regardless of the length of time, rehabilitation, pardon or any other method of release from all "penalties and disabilities" in the law, section 12021 remains. It means that an ex-felon, whose prior conviction involved the use of a dangerous weapon,[7] may never, for the rest of his life, have under his control or possession, including in his own home or any other private place, a firearm.

■ A violation of section 12021, subdivision (a)[8] is a relatively simple crime to commit: an ex-felon who owns, possesses, or has custody or control of a firearm commits a felony. *Implicitly, the crime is committed the instant the felon in any way has a firearm within his control.*

We next turn to the cases involving the joint application of sections 654 and 12021. A number of those cases have held that section 654 does not bar separate punishment for a section 12021 offense and another offense in which a weapon was involved. In *People* v. *Hudgins* (1967) 252 Cal.App.2d 174 [60 Cal.Rptr. 176], the defendant was convicted of second degree murder and of a violation of section 12021. The defendant charged into his ex-wife's house at approximately 1:45 a.m., went into the kitchen, and fired three shots, killing one Edward Simmons. Defendant then forced his way upstairs to locate his ex-wife. He approached her with a weapon; however, she was able to persuade him not to kill her, and he left. (*Id.*, at pp. 177-178.) On appeal, the defendant contended that his separate sentences for the 12021 violation and the murder were prohibited by section 654, citing *People* v. *McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]. The court stated, "This would be true if the two offenses were committed by

shall not be restored, and Sections 12001 and 12021 shall apply, if the person was ever convicted of a felony involving the use of a dangerous weapon."

[6] Section 1203.4 "provides that an adult defendant who successfully fulfills the conditions of his probation may petition the superior court for dismissal of the charge of which he was convicted, and that the dismissal will release him from 'all penalties and disabilities' resulting from the conviction." (*Bell, supra,* 49 Cal.3d at p. 545.) However, subdivision (a) of section 1203.4 further provides, "Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or prevent his or her conviction under Section 12021."

[7] It is an open question whether the term "use of a dangerous weapon" in sections 4852.17 and 4854 carries the same meaning as the term "use" in later-enacted firearm-use enhancement statutes (see e.g., § 12022.5) as interpreted by the courts (see *People* v. *Jacobs* (1987) 193 Cal.App.3d 375 [238 Cal.Rptr. 278]).

[8] At the time of defendant's crime, section 12021 prohibited ex-felons from having only concealable firearms. A 1989 amendment expanded the coverage of section 12021 to include *any* firearm.

one act or in a series of acts *having but a single purpose*, but such was not the case. The acts constituting the offenses were separable. Possession of the gun constituted one offense, and this was an act separate and apart from any use that was made of the gun, and would have been a completed offense even if no use had been made of it. Appellant was properly sentenced for both offenses." (*Hudgins, supra*, at pp. 184-185, italics added.)

In *People v. Killman* (1975) 51 Cal.App.3d 951 [124 Cal.Rptr. 673], the court rejected the defendant's contention that separate punishments for his convictions of first degree robbery (§ 211) and possession of a concealable weapon by an ex-felon (§ 12021) violated section 654. The court explained, "The two convictions were based on different acts, even though the information alleged both offenses were committed 'on or about' the same date. The record shows Killman was convicted of first degree robbery for serving as the accomplice of an armed robber, and was convicted of violating Penal Code section 12021 for his own personal possession of the gun before the robbery." (*Id.*, at p. 959.)

In *People v. Harrison* (1969) 1 Cal.App.3d 115 [81 Cal.Rptr. 396], the court held that the defendant could be punished for convictions of both section 12021 and section 12031, subdivision (a) (carrying a loaded firearm in a vehicle on a public street), even when both charges involved the same weapon. The court explained, "The two statutes strike at different things. One is the hazard of permitting ex-felons to have concealable firearms, loaded or unloaded; the risk to public safety derives from the type of person involved. The other strikes at the hazard arising when any person carries a loaded firearm in public. Here, the mere fact the weapon is loaded is hazardous, irrespective of the person (except those persons specifically exempted) carrying it.

"The 'intent or objective' underlying the criminal conduct is not single, but several, and thus does not meet another of the tests employed to determine if Penal Code section 654 is violated. [Citation.] For an ex-convict to carry a concealable firearm is one act. But loading involves separate activity, and while no evidence shows that appellant personally loaded the pistol, there seem little distinction between loading and permitting another to do so. Thus, two acts, not a single one, are necessarily involved and bring our case outside the prohibition against double punishment for a single act or omission. We therefore hold contrary to appellant's contentions on this point." (*Harrison, supra*, at p. 122.)

Other cases have held that section 654 did bar separate punishments. (*Bradford, supra*, 17 Cal.3d 8; *People v. Venegas* (1970) 10 Cal.App.3d 814 [89 Cal.Rptr. 103].) These cases are distinguishable on their facts.

In *Bradford*, the defendant was convicted of assault with a deadly weapon on a peace officer with use of a firearm (§§ 245, subd. (b), 12022.5) and possession of a concealable firearm by an ex-felon (§ 12021). After the defendant and another had robbed a bank, they were stopped by a highway patrol officer for speeding. The defendant got out and seized the officer's revolver. The officer was struck by another motorist. The defendant fired several shots at the officer and the motorist before fleeing. (*Id.*, at p. 13.) In determining that section 654 prohibited separate punishments for the two crimes, the court explained, "Defendant's possession of [the officer's] revolver was not 'antecedent and separate' from his use of the revolver in assaulting the officer." (*Bradford, supra,* 17 Cal.3d at p. 22.)

In *Venegas, supra,* 10 Cal.App.3d 814, the defendant was sentenced for convictions of assault with a deadly weapon with intent to commit murder (§ 217) as well as possession of a concealable weapon by an ex-felon (§ 12021). The evidence showed that a barroom waitress heard a shot, turned and saw the defendant holding a gun. She heard two more shots. (*Id.*, at p. 818.) Defense witnesses testified that the victim pulled a gun and the defendant struggled to seize it. The defendant was struck in the leg by the first gunshot. The court held that section 654 prohibited separate punishments because no evidence indicated that the defendant possessed the weapon before the assault. The court stated, "Here the evidence shows a possession only at the time defendant shot [the victim]. Not only was the possession physically simultaneous, but the possession was incidental to only one objective, namely to shoot [the victim]." (*Id.*, at p. 821.)

From *Bradford* and *Venegas,* we distill the principle that if the evidence demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense, section 654 will bar a separate punishment for the possession of the weapon by an ex-felon. On this basis, these cases are easily distinguishable.

In another group of cases in which a section 654 challenge was sustained, the courts simply failed to address the issue of prior or subsequent possession of the weapon or, in our view, reached the wrong result on the facts. In *People* v. *Kane* (1985) 165 Cal.App.3d 480 [211 Cal.Rptr. 628], the defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)), discharging a weapon at an occupied motor vehicle (§ 246) and possession of a firearm by an ex-felon (§ 12021). The weapon was apparently never recovered. The People conceded error under section 654, and the court apparently accepted the concession without discussion of *Bradford* or other relevant authorities. (*Id.*, at p. 488.)

In *People* v. *Cruz* (1978) 83 Cal.App.3d 308 [147 Cal.Rptr. 740], the court ruled that the defendant could not be punished separately for his

convictions of assault with a deadly weapon (§ 245) and possession of a concealable firearm by an ex-felon (§ 12021). (*Id.*, at p. 333.) The evidence showed that the defendant was refused entrance to a bar. He left, but returned three to five minutes later with firearm, fired five shots and fled. (*Id.*, at p. 314.) The court stated that the prosecution had failed to show that the defendant's possession of the weapon was " 'antecedent and separate' from his use in the assaults" (*ibid.*) and that the defendant's possession of the firearm during his flight from the scene "was only incidental to the primary objective, the assaults." (*Ibid.*) As in *Kane*, the court noted that the People impliedly conceded the error on appeal. (*Ibid.*)

In *People* v. *Burnett* (1967) 251 Cal.App.2d 651 [59 Cal.Rptr. 652], the defendant was convicted of and sentenced for both armed robbery (§ 211) and two counts of possession of a concealable firearm by an ex-felon (§ 12021). The court held that section 654 barred a separate sentence for the section 12021 conviction based on the defendant's use of a revolver in the robbery, but upheld a separate sentence for the second count which was based on the defendant's possession of a different weapon two weeks later. (*Id.*, at pp. 657-658.) The *Burnett* court did not discuss whether subsequent possession of the weapon used in the robbery could be separately punished.

■ In the instant case, the evidence showed that defendant used a handgun to perpetrate two robberies separated in time by about an hour and a half. He still had the gun in his possession when he was arrested half an hour later. Unlike in *Bradford* and *Venegas*, the defendant already had the handgun in his possession when he arrived at the scene of the first robbery. A justifiable inference from this evidence is that defendant's possession of the weapon was not merely simultaneous with the robberies, but continued before, during and after those crimes. Section 654 therefore does not prohibit separate punishments. (*Hudgins, supra*, 252 Cal.App.2d at p. 174.)

This conclusion is strengthened by an analogy to cases which have considered whether multiple gun-use enhancements may be imposed. In *People* v. *Levitt* (1984) 156 Cal.App.3d 500 [203 Cal.Rptr. 276], the court focused on whether the defendant had had "time out" from a series of crimes, enabling him to pause and reflect on the penal consequences of his acts. (*Id.*, at p. 511.) The *Levitt* court further noted " '[W]here there are consecutive robberies in several communities over a period of several hours, a defendant may not bootstrap himself into avoidance of additional penalties by claiming that the series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composed an indivisible transaction. [Citations.]' " (*Ibid.*)

Commission of a crime under section 12021 is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon. (*Harrison, supra,* 1 Cal.App.3d 115; *Hudgins, supra,* 252 Cal.App.2d 174.) In other words, in the case here, defendant's intent to possess the weapon did not import or include the intent to commit the robberies.

We conclude that the court's imposition of the eight-month consecutive sentence for count III did not violate section 654.

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McDaniel, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied December 19, 1990.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.