Filed 8/31/15  P. v. Valencia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>GILBERTO TORREZ VALENCIA,<br><br>  Defendant and Appellant. | H040787<br>(Santa Clara County<br> Super. Ct. No. C1242184) |

## I.  INTRODUCTION

Defendant Gilberto Torrez Valencia was convicted after jury trial of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)),[1] attempting to dissuade a victim from reporting a crime (§ 136.1, subd. (b)(1)), carrying a loaded firearm in public (§ 25850, subd. (a)), misdemeanor sexual battery (§§ 242, 243.4, subd. (e)(1)), two counts of misdemeanor prowling (§ 647, subd. (h)), and two counts of misdemeanor aggravated trespassing (§ 602.5, subd. (b)).  The jury also found true the allegations that, during the commission of the burglary, a person not an accomplice was present in the residence (§ 667.5, subd. (c)(21)) and defendant was armed with a firearm (§ 12022, subd. (a)(1)).  The trial court sentenced defendant to seven years eight months in prison, which included a consecutive sentence of eight months on the conviction for carrying a loaded firearm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On appeal, defendant contends that the trial court should have stayed the sentence for carrying a loaded firearm pursuant to section 654. We agree, and we will order the judgment modified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, defendant was charged by amended information with two counts of first degree burglary (§§ 459, 460, subd. (a); counts 1 & 2), one count of attempting to dissuade a victim from reporting a crime (§ 136.1, subd. (b)(1); count 3), one count of carrying a loaded firearm in public (§ 25850, subd. (a); count 4), one count of misdemeanor sexual battery (§§ 242, 243.4, subd. (e)(1); count 5), two counts of misdemeanor prowling (§ 647, subd. (h); counts 6 & 7), and two counts of misdemeanor aggravated trespassing (§ 602.5, subd. (b); counts 8 & 9). With respect to the burglaries in counts 1 and 2, the information alleged that defendant entered the dwellings with the intent to commit a felony, assault with intent to commit rape. The information also alleged that a person not an accomplice was present in the residences during the commission of the burglaries (§ 667.5, subd. (c)(21)), and that in the commission of the burglary in count 2 defendant was armed with a firearm (§ 12022, subd. (a)(1)). The information further alleged as to count 4 that defendant was not in lawful possession of the firearm. (See § 25850, subd. (c)(4).)

### A. *The Prosecution's Case*

Defendant and his wife managed and lived at an apartment complex. As manager, defendant had keys to all the apartments.

L. Doe lived at the apartment complex in a one-bedroom apartment with her husband and three children. I. Doe and her husband/partner lived next door to L. Defendant's apartment was about a three minute walk from L.'s and I.'s apartments.

Each apartment had two doors, a wood door and a metal screen door. Each door had two locks, and one key worked for all four locks. The doors opened onto a walkway.

2

## 1. The incident at L. Doe's apartment

L.'s husband worked at a job that started at 3:00 a.m. in South San Francisco, which was nearly an hour away. At night, he slept in the bedroom with one child, and L. slept in the living room with their other two children. On the morning of October 3, 2012, L.'s husband left for work about 2:10 a.m. while L. was still sleeping. L.'s husband testified that, upon leaving the apartment, he locked both doors of the apartment.

L.'s husband went to his car, which was parked in an assigned space at the apartment complex. He started the car, retrieved some water from his trunk, and then sat in the driver's seat with the car window open.

Defendant approached the car and said, "Cheers." Defendant stated that he had seen somebody opening the trunk of the car. L.'s husband acknowledged that it was him. Defendant responded that he was "just checking." Defendant's speech was slurred and he appeared intoxicated. In response to defendant's questions, L.'s husband indicated that he was going to work in South San Francisco. L.'s husband subsequently left for work.

L. testified that she woke up about 2:30 a.m., when someone was kissing her mouth and neck and softly touching her vagina over her clothes. She thought her husband was touching her until she opened her eyes and saw defendant lying next to her.

L. was scared. She pushed defendant and asked, "What are you doing here?" Defendant stated that she had been walking outside, and that he "didn't know that [she] was a sleepwalker." L. had never sleepwalked. She told him that he was crazy and to leave. Defendant smelled of alcohol.

After defendant left the apartment, L. called her husband who had been driving to work for about 15 minutes. She cried and told her husband what had happened. He decided to return home.

A few minutes after L. talked to her husband on the phone, defendant knocked on her apartment door. L. opened the wood door a little but kept the metal screen door

3

closed and locked. Defendant had beer cans and stated that he wanted to talk to her. She told him to leave or she would call the police. Defendant responded that he was going to "call immigration." L. believed him and felt scared. She closed the door and defendant left. When L.'s husband arrived home, she told him what defendant had said about calling immigration. L. and her husband decided not to call the police.

About an hour after L.'s husband had returned to the apartment, he and L. heard a woman scream or yell in the apartment next door, where I. lived. They also heard loud male voices.

Later that morning, when the neighbors were leaving for work, L. and her husband spoke to them about what had happened in their (the neighbors') apartment. After talking to the neighbors, L. became more concerned about her safety. L. and her husband eventually decided to call the police around 9:00 a.m. L. had been afraid to call the police because she believed that she might be deported according to defendant's threat.

## 2. The incident at I. Doe's apartment

On October 2, 2012, the day before the incident, defendant went to I.'s apartment to fix the stove. I.'s husband was out of town on a business trip. I.'s husband returned home that evening after the stove was fixed. I.'s husband did not see defendant at any time between coming home from the business trip and going to bed that night.

Before going to bed, I.'s husband locked the metal and wood apartment doors. The bedroom window and another window were open about six inches. I. testified that when a window is open and someone opens the apartment door, the vertical blinds on the window move and touch each other.

About 2:30 a.m. on October 3, 2012, I. woke up to the sound of the window blinds moving in the living room. She eventually opened her eyes because she felt the presence of someone in the bedroom. I. saw a person's shadow and screamed.

I.'s husband woke up, and I. told him that someone was inside the apartment. I.'s husband got out of bed and saw a shadow retreating in the hallway. He saw defendant,

4

who appeared surprised, standing in the living room. Defendant was holding a pistol in one hand and a small towel in the other hand. Defendant never raised the pistol.

I.'s husband yelled at defendant, asked him who he was, and told him to get out. Defendant identified himself and said that he was the manager. I.'s husband recognized defendant. I.'s husband asked defendant what he was doing there. Defendant responded that he had been walking outside, that he had heard noises, and that he had come inside to see if everything was okay. He stated that the doors were open and that he thought someone had come into the apartment.

I.'s husband turned on all the lights and checked the apartment but did not find anyone. Defendant exited the apartment and stated that a screen had been removed from the bedroom window. Defendant put the screen back in. The screen had been in the window earlier in the evening. I. had been sleeping on the side of the bed that was closest to the window. The light outside the bedroom window was on when I. went to sleep, but it was off when she woke up.

I.'s husband later checked the apartment door and found no signs of tampering or damage to the wood door. Defendant on a prior occasion had stated that he had seen a young man "roaming around," and that if I.'s husband saw the young man, I.'s husband should tell the young man to "get lost."

### 3. The police investigation

San Jose police officers were dispatched to the apartment complex after L. called the police. During their investigation, the police asked defendant's wife about a gun, and she retrieved a small case from the apartment. Inside the case was an unloaded semi-automatic Beretta handgun, an unloaded magazine, and seven bullets.

When the police first talked to defendant, he was not handcuffed or under arrest. Defendant admitted entering I.'s apartment the night before, but he denied entering L.'s apartment. The police eventually placed defendant under arrest and "read him his

rights." The police also recovered keys to L.'s and I.'s apartments from the rental office which was attached to defendant's apartment.

Defendant was transported to a preprocessing center and interviewed by the police. Defendant told the police that he had been checking the apartment complex for safety reasons, and that L. had opened her door and invited him inside. He stated that they had kissed, and that he had touched her vagina. While they were lying on the carpet, L. suddenly got up and told him to leave.

Defendant claimed that, when he left L.'s apartment, he heard noises from I.'s apartment next door. There had previously been a robbery in another apartment. Defendant went back to his apartment, got a gun, and put it inside his pants.

Defendant told the police that the gun had a magazine inside with bullets in it, but there was no round in the chamber of the gun. Defendant stated that he had previously bought the gun from an unknown person at night, that the gun was not registered to him, and that it was possibly stolen from the owner.

Defendant told the police that when he returned to I.'s apartment, the front door was open. Defendant claimed that he knocked and called out before going inside I.'s apartment. While inside he continued to ask, "[I]s anybody there?" Eventually he pushed the bedroom door open a little bit and a woman screamed. Defendant claimed that he continued to ask, "[I]s anybody there," until the husband answered. Defendant told the husband to check whether anyone had gotten into the apartment.

The prosecution introduced into evidence a written certification from the California Department of Justice Bureau of Firearms indicating that defendant was not the owner of the Beretta gun.

**B.** *The Defense Case*

Guadalupe Avalos used to live at the apartment complex prior to the incident. Her stepfather was friends with defendant. Avalos testified that defendant had a reputation

6

for being courteous and respectful to female tenants. He took pride in taking care of the apartment complex and tenants.

On the night of the incident, Avalos was staying with her mother, who still lived at the complex. Avalos testified that she was awakened by the sound of a hard knock on someone else's door. She heard defendant ask in a loud voice if the person was "okay," and if the person wanted or needed him to call the police. When Avalos went outside onto a balcony, she saw defendant and another male at an apartment across from her. A light was on inside the apartment. Defendant was outside the residence and the other male was inside the residence. Avalos assumed they were talking based on their body movements, but she could not hear what they were saying. Avalos saw defendant put a screen into a window.

### C. *Verdicts and Sentencing*

The jury found defendant not guilty of first degree burglary of L.'s apartment (count 1), but found him guilty of first degree burglary of I.'s apartment (§§ 459, 460, subd. (a); count 2). The jury also found true the allegations that, during the commission of the burglary, I. and her husband, who were not accomplices, were present in the residence (§ 667.5, subd. (c)(21)), and that defendant was armed with a firearm (§ 12022, subd. (a)(1)).

The jury also found defendant guilty of the remaining counts: attempting to dissuade a victim from reporting a crime (§ 136.1, subd. (b)(1); count 3), carrying a loaded firearm in public (§ 25850, subd. (a); count 4), misdemeanor sexual battery (§§ 242, 243.4, subd. (e)(1); count 5), two counts of misdemeanor prowling (§ 647, subd. (h); counts 6 & 7), and two counts of misdemeanor aggravated trespassing (§ 602.5, subd. (b); counts 8 & 9). The jury also found true the allegation as to count 4 that defendant was not in lawful possession of the firearm. (See § 25850, subd. (c)(4).)

On February 21, 2014, the trial court sentenced defendant to seven years eight months in prison. The sentence consists of the middle term of four years on the burglary

7

count (§§ 459, 460, subd. (a); count 2), with consecutive terms of one year for the arming enhancement (§ 12022, subd. (a)(1)), two years on the count for attempting to dissuade a victim (§ 136.1, subd. (b)(1); count 3), and eight months (one-third the midterm) on the count for carrying a loaded firearm (§ 25850, subd. (a); count 4). The court ordered concurrent 90-day terms for misdemeanor sexual battery and one count of misdemeanor prowling (§§ 242, 243.4, subd. (e)(1), 647, subd. (h); counts 5 & 6) and stayed the terms for the remaining misdemeanor counts (§§ 602.5, subd. (b), 647, subd. (h); counts 7, 8 & 9) pursuant to section 654.

## III. DISCUSSION

Defendant contends that his eight-month sentence for carrying a loaded firearm in public (§ 25850, subd. (a)), which was ordered to be served consecutive to the sentence on the burglary count and the arming enhancement (§§ 459, 460, subd. (a), 12022, subd. (a)(1)), should have been stayed under section 654. He argues that the carrying offense and the arming enhancement were based on "a single act of carrying the weapon . . . and a single objective motivating that act."

The Attorney General contends that section 654 does not apply in this context, where defendant seeks to stay punishment on a substantive offense (here, the carrying offense) that is based on the same conduct as an enhancement for a separate offense (here, the arming enhancement on the burglary offense). The Attorney General further contends that, even if section 654 applies in this context, there is substantial evidence to support the trial court's implied finding that the carrying offense and the arming enhancement were based on separate acts.

### A. *Background*

In arguing to the jury that defendant should be found guilty of carrying a loaded firearm in public, the prosecution implicitly referred to defendant obtaining the gun from his apartment, loading it, and then going to I.'s apartment, as well as to evidence that certain parts of the apartment complex constituted a public place, such as exterior

8

walkways. Regarding the burglary offense and the arming enhancement, the prosecution argued that defendant entered I.'s apartment with the gun with the intent to commit assault with the intent to commit rape. According to the prosecution, defendant brought the firearm to I.'s apartment because the "first try" at L.'s apartment "didn't really work."

At the sentencing hearing, defense counsel contended that, if the trial court was going to impose punishment for the arming enhancement, the punishment for the carrying offense should be stayed pursuant to section 654. Defense counsel argued, "Here, we know he's got the gun and went straight to the apartment, and it was never brandished. Nothing was ever done with the gun and then from what we know he goes back and then that gun is retrieved the next morning. So it's the same conduct. It's the same fact. Nothing else was done. There was no break in time where he did something else with the gun . . . ."

The prosecution responded that section 654 did not apply based on the facts of the case. The prosecution argued, "The arming [enhancement] is for a residential burglary. He was inside of a private home. The [section] 25850 [offense] is for carrying a loaded weapon in public, and the two cannot happen at the same time. The defendant went back to the manager's area in the apartment complex that is open. I believe that one of the victims testified it's about a 3 to 5 minute walk between those apartments, and while that means it is certainly within the court's discretion to sentence him concurrently, it is not a [section] 654 issue."

The trial court implicitly rejected defendant's argument under section 654, as the court imposed consecutive terms for the carrying offense and the burglary offense and arming enhancement.

**B.** *General Legal Principles*

Relevant to his contentions on appeal, defendant was convicted of carrying a loaded firearm and burglary, and the jury found true the allegation that, in the commission of the burglary, defendant was armed with a firearm. "A person is guilty of

9

carrying a loaded firearm when the person carries a loaded firearm on the person . . . while in any public place . . . ." (§ 25850, subd. (a).) A person is guilty of burglary when the person "enters any house . . . [or] apartment . . . with intent to commit . . . any felony." (§ 459.) Regarding an arming enhancement, "a person who is armed with a firearm in the commission of a felony . . . shall be punished by an additional and consecutive term of imprisonment." (§ 12022, subd. (a)(1).) A defendant is "armed" if "the gun is 'available for use, either offensively or defensively.' [Citation.]" (*People v. Pitto* (2008) 43 Cal.4th 228, 236.)

Section 654 provides in pertinent part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, "[s]ection 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.) The purpose of the statute is to ensure that the punishment is commensurate with the defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 550-551 (*Perez*); accord, *People v. Correa* (2012) 54 Cal.4th 331, 341.)

The California Supreme Court has further instructed that determining " '[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Britt* (2004) 32 Cal.4th 944, 951-952 (*Britt*).) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he [or she] may be punished for the independent violations committed in pursuit of each objective even though the violations were parts

10

of an otherwise indivisible course of conduct." (*Perez, supra,* 23 Cal.3d at p. 551, fn. omitted.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence. [Citation.]" (*People v. Brents* (2012) 53 Cal.4th 599, 618.) In conducting the substantial evidence analysis, "[w]e review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*Jones*, *supra*, at p. 1143.)

### C. *Analysis*

In determining whether the carrying offense and the enhancement for being armed during the burglary were part of an indivisible course of conduct, we find *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*) instructive. In *Latimer*, the defendant kidnapped his victim, drove her to the desert, and raped her. (*Id.* at p. 1205.) The California Supreme Court observed that "[i]t could be argued that defendant had two intents: (1) to drive the victim against her will to an isolated area, and (2) to rape her." (*Id.* at p. 1216.) In determining that section 654 applied, the court explained that "[a]lthough the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Latimer*, *supra*, at p. 1216.) The court concluded that " '[s]ince the kidnapping was for the purpose of committing the sexual offenses and [defendant] has been punished for each of the sexual offenses,' section 654 bars execution of sentence on the kidnapping count. [Citations.]" (*Id.* at pp. 1216-1217.)

In this case, similar to *Latimer*, defendant's carrying of a loaded firearm in public and being armed during the burglary were committed to facilitate a single objective – to

11

assault I. in her apartment with the intent to rape her.  There is no substantial evidence to support a finding that defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other" when he committed the carrying offense and when he was armed during the burglary.  (*Perez, supra,* 23 Cal.3d at p. 551.) The jury found that defendant entered I.'s apartment with the intent to commit assault with the intent to commit rape.  There is no substantial evidence that defendant had any objective other than to assault and rape I. when he (1) retrieved the loaded firearm, (2) carried it across the apartment complex, (3) entered I.'s apartment, and (4) had the firearm available for use inside the apartment.  Given that the carrying offense and being armed during the burglary " 'were incident to one objective, . . . defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*Britt*, *supra*, 32 Cal.4th at p. 952; see *Latimer*, *supra*, 5 Cal.4th at p. 1216.)

We are not persuaded by the Attorney General's contention that the carrying offense and the enhancement for being armed during the burglary "were necessarily separate and distinct" because "it was impossible for the conduct underlying" them to occur simultaneously.  The California Supreme Court has stated that "[t]he fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. [Citations.]" (*People v. Bauer* (1969) 1 Cal.3d 368, 377.)  As we have explained, defendant's course of conduct in this case in carrying the firearm from his apartment into I.'s apartment was part of an indivisible transaction.

In arguing that section 654 does not preclude punishment for defendant's carrying offense, the Attorney General cites several cases involving possession of a firearm by a convicted felon (see former § 12021, now § 29800), including *People v. Ratcliff* (1990) 223 Cal.App.3d 1401 (*Ratcliff*), *Jones*, *supra*, 103 Cal.App.4th 1139, and *People v. Bradford* (1976) 17 Cal.3d 8 (*Bradford*).  We do not find these cases helpful to the Attorney General's position.

12

In *Ratcliff*, the defendant used a handgun to commit two robberies in approximately an hour and a half. (*Ratcliff*, *supra*, 223 Cal.App.3d at pp. 1404-1405.) The defendant still had the gun when he was arrested about a half an hour later. (*Id.* at p. 1405.) The defendant's sentence included a prison term for being an ex-felon in possession of a firearm (former § 12021) and an enhancement for the same firearm use on one of two counts for robbery. (*Ratcliff*, *supra*, at pp. 1404, 1407.)

The appellate court disagreed with the defendant's contention that the offense for being an ex-felon in possession of a firearm and the firearm use enhancement were part of a continuous transaction. The appellate court reasoned that "[c]ommission of a crime under [former] section 12021 is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon. [Citations.]" (*Ratcliff*, *supra*, 223 Cal.App.3d at p. 1414.) The appellate court observed that in the case before it, the defendant "already had the handgun in his possession when he arrived at the scene of the first robbery. A justifiable inference from this evidence is that defendant's possession of the weapon was not merely simultaneous with the robberies, but continued before, during and after those crimes." (*Id.* at p. 1413.) The appellate court concluded that the "defendant's intent to possess the weapon did not import or include the intent to commit the robberies," and that therefore separate punishment for possession of the firearm was proper. (*Id.* at p. 1414.)

In contrast to *Ratcliff*, defendant in the instant case was not convicted of the offense of being an ex-felon in possession of a firearm. Although the jury found true the allegation that defendant was "not in lawful possession of the firearm," this finding simply made the carrying offense a felony rather than a misdemeanor, and was based only on the jury's determination that defendant did not lawfully own the firearm, or have the permission of the lawful owner or custodian of the firearm, when he carried the

13

firearm. (§ 25850, subd. (c)(4)); see § 16750; CALCRIM No. 2543.) The jury's finding was not based on any determination (or evidence) that defendant was an ex-felon in possession of a firearm. Moreover, the record reflects that defendant's intent with respect to the carrying offense, his possession of the firearm at that time, and being armed during the burglary were the same, that is, he had an intent to commit assault with the intent to commit rape. There was no substantial evidence that he committed the carrying offense with a criminal objective that was "independent of and not merely incidental to" his criminal objective in being armed during the burglary. (*Perez, supra,* 23 Cal.3d at p. 551.) *Ratcliff* does not compel separate punishment for the carrying offense and the enhancement for being armed during the burglary in this case.

*Jones* is similarly distinguishable. In *Jones*, the defendant fired several gunshots at the victim's house. (*Jones*, *supra*, 103 Cal.App.4th at p. 1142.) The defendant's residence was later searched but no gun or ammunition was recovered. (*Ibid.*) The defendant was sentenced for being an ex-felon in possession of a firearm (former § 12021, subd. (a)(1)) and shooting at an inhabited dwelling. (*Jones*, *supra*, at p. 1142.)

The appellate court disagreed with the defendant's contentions that possession of the gun was "incidental to and simultaneous with" the offense of shooting at an inhabited dwelling and that section 654 precluded punishment on both offenses. (*Jones*, *supra*, 103 Cal.App.4th at p. 1142.) Among other reasons, the court determined that "[t]he evidence . . . supported an inference that [the defendant] harbored separate intents in the two crimes. [The defendant] necessarily intended to possess the firearm when he first obtained it, which, as we have discussed, necessarily occurred antecedent to the shooting. That he used the gun to shoot at [the victim's] house required a second intent *in addition* to his original goal of possessing the weapon. [The defendant's] use of the weapon after completion of his first crime of possession of the firearm thus comprised a 'separate and distinct transaction undertaken with an additional intent which necessarily is something

14

more than the mere intent to possess the proscribed weapon.' (*People v. Ratcliff*, *supra*, 223 Cal.App.3d at p. 1414.)" (*Jones*, *supra*, at p. 1147.)

*Jones* is distinguishable from the instant case, which involves a carrying offense, not a felon-in-possession offense. Further, as we have explained, the carrying offense and defendant's act of being armed during the burglary were incident to only one objective – the intent to commit assault with the intent to commit rape. (See *Latimer*, *supra*, 5 Cal.4th at p. 1216; *Britt*, *supra*, 32 Cal.4th at pp. 951-952.)

Lastly, in *Bradford*, the defendant was stopped for speeding by law enforcement. The defendant took the officer's revolver and shot at the officer before driving away. Defendant was eventually convicted of assault with a deadly weapon on a peace officer and possession of a firearm by an ex-felon (former § 12021). (*Bradford*, *supra*, 17 Cal.3d at p. 13.)

The California Supreme Court stated: "The standard for applying section 654 in the circumstances of this case was restated in *People v. Venegas* (1970) 10 Cal.App.3d 814. 'Whether a violation of [former] section 12021, forbidding persons convicted of felonies from possessing firearms concealable upon the person,[2] constitutes a divisible transaction from the offense in which he employs the weapon depends upon the facts and evidence of each individual case. Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.' [Citation.]" (*Bradford*, *supra*, 17 Cal.3d at p. 22.) In the case before it, the California Supreme Court concluded that the defendant's possession of the officer's revolver "was not 'antecedent and separate'

---

**2** In 1989, section 12021 was amended to prohibit a felon's possession of any firearm. (*Jones*, *supra*, 103 Cal.App.4th at p. 1143, fn. 3.)

from his use of the revolver in assaulting the officer," and that therefore punishment had to be stayed for the defendant's violation of former section 12021 for possession of a firearm by an ex-felon. (*Bradford*, *supra*, at p. 22; see *id.*, at pp. 22-23.)

We do not believe *Bradford* dictates separate punishment in the instant case. We believe the instant case, which involved carrying a loaded weapon in public followed by defendant's act of being armed during a burglary, is more analogous to the facts in *Latimer*, where successive offenses of kidnapping and rape were incident to only one objective and the California Supreme Court concluded that section 654 precluded punishment for both offenses. (*Latimer*, *supra*, 5 Cal.4th at p. 1216; see *Britt*, *supra*, 32 Cal.4th at pp. 951-952.)

The Attorney General further argues that separate punishment is warranted for the carrying offense and the arming enhancement because a defendant who carries a loaded gun through a public place in order to commit an armed burglary is more culpable than a defendant who acquires a gun at the scene of the crime.

Although the purpose of section 654 is to ensure that a defendant's punishment is commensurate with culpability, the California Supreme Court has acknowledged that the " 'intent or objective' test" in some situations "does not . . . so ensure." (*Latimer*, *supra*, 5 Cal.4th at p. 1211.) For example, "[a] person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective." (*Ibid.*) In *Latimer*, the California Supreme Court acknowledged that the defendant " 'having been lawfully convicted of kidnapping and rape(s), is clearly more culpable than a defendant who rapes without kidnapping.' " (*Ibid.*) Nonetheless, the California Supreme Court in *Latimer* applied the "intent or objective" test to the defendant's kidnapping and rape offenses and concluded that, " '[s]ince the kidnapping was for the purpose of committing the sexual offenses and [defendant] has been punished for each of the sexual offenses,' section 654 bar[red] execution of sentence on the kidnapping count. [Citations.]"

16

(*Latimer*, *supra*, at pp. 1216-1217.)  Based on *Latimer*, we believe section 654 similarly bars execution of sentence on defendant's carrying offense in view of the punishment for being armed during the burglary.

Lastly, the Attorney General contends that there was evidence from which the jury could infer that defendant carried the loaded gun back to his apartment after the burglary. The Attorney General argues that this later act of carrying the gun was "separate and distinct from the arming aspect of his burglary," and that therefore separate punishment for the carrying offense is proper.

"[W]here there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339 (*McCoy*).)  In the absence of a foundation for identifying the factual basis for the jury's verdict, "a trial court may base its decision under section 654 on any of the facts that are in evidence at trial, without regard to the verdicts." (*McCoy*, *supra*, at p. 1340, italics omitted.)  For example, in *People v. Jones* (2012) 54 Cal.4th 350, the California Supreme Court determined that, based on the allegations in the information and the prosecutor's argument to the jury, the defendant's guilt on three firearm charges was based solely on his having a gun in his car when he was arrested, not on any different acts. (*Id.* at pp. 352, 359.)  The court accordingly rejected the Attorney General's contention that the defendant's offenses were based on separate acts, including acts occurring three days before his arrest. (*Id.* at p. 359.)  The court ultimately concluded that the defendant's convictions were based on a single act and that section 654 prohibited multiple punishment. (*People v. Jones*, *supra*, at p. 360.)

In this case, the prosecutor's argument to the jury regarding the carrying count was based solely on defendant's carrying of the loaded firearm from his apartment to I.'s apartment.  The prosecutor never expressly argued that defendant had carried the firearm back to his apartment, or that it was still loaded at that time.  Moreover, there was no reason for the jury to even consider whether defendant carried the firearm back to his

17

apartment or whether there was evidence that it was still loaded at that time, as the evidence was undisputed, based on defendant's statements to the police, that he had carried the loaded firearm from his apartment to I.'s apartment. In view of the prosecutor's argument and the undisputed evidence concerning the commission of the carrying offense when defendant went to I.'s apartment, we do not believe the jury considered, much less based its verdict on, the circumstantial evidence of defendant carrying the firearm still loaded back to his apartment. Because "there is a basis for identifying the specific factual basis for a verdict" on the carrying offense, the trial court could not "find otherwise in applying section 654" by determining that defendant committed a separate criminal act of carrying subsequent to the burglary. (*McCoy*, *supra*, 208 Cal.App.4th at p. 1339; see *People v. Jones*, *supra*, 54 Cal.4th at p. 359.)

In sum, we conclude that defendant's course of conduct in carrying the loaded firearm across the apartment complex and entering I.'s apartment with the firearm was incident to one objective. Accordingly, under section 654, defendant may not be punished for both the carrying offense and for being armed during the burglary.

## IV. DISPOSITION

The judgment is ordered modified by staying the sentence of eight months on count 4 for carrying a loaded firearm in public (Pen. Code, § 25850, subd. (a)) pursuant to Penal Code section 654. As so modified, the judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____
MIHARA, J.




_____
MÁRQUEZ, J.