Filed 6/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NORMAN THOMAS<br>SALAZAR,<br><br>    Defendant and Appellant. | 2d Crim. No. B309803<br>(Super. Ct. No. 2018027995)<br>(Ventura County) |

The Goddess of justice is not wearing a black armband today weeping for the California Constitution. (See *Brosnahan v. Brown* (1982) 32 Cal.3d 236, 299 (dis. opn. of Mosk, J.).) Instead, she is, perhaps, applauding our application of it where there has been no miscarriage of justice in the Superior Court. It is our Constitutional obligation to affirm a judgment, where a more favorable outcome will not result upon reversal.

Norman Thomas Salazar appeals from the judgment after the jury found him guilty of false imprisonment by violence or menace (count 1, Pen. Code, §§ 236, 237, subd. (a))[1] and

---

[1] Statutory references are to the Penal Code.

infliction of corporal injury on a person with whom he had a current or former dating relationship (count 3, § 273.5, subd. (a)). He admitted a prior strike (§§ 667, subds. (c)(1), (e)(1), 1170.12, subds. (a)(1), (c)(1)). The trial court sentenced him to state prison for seven years, four months.

Appellant contends the trial court erred when it did not: (1) stay the sentence for count 1, and (2) strike his prior strike conviction. He also contends that Senate Bill No. 567, which added a procedural change to section 1170, mandates resentencing. We affirm.

### *Factual History*

Appellant and M.Q. previously had a dating relationship. One afternoon, after their dating relationship had ended, she went to his motel room. He opened the door and pulled her inside. His greeting also included punching her in the forehead, causing her to bleed profusely.

Appellant pushed a desk in front of the door to prevent her escape, took M.Q.'s car keys, and disabled her cell-phone. He said it would be funny to try bear spray (pepper spray) on her. He sprayed her in the face, laughed, and said "that's what [you] get." During the next several hours, he punched her five to ten times and sprayed her five to ten times. He kicked her inner thigh, knocking her to the ground. This resulted in a large bruise. He laughed and said she deserved it.

Appellant announced that he was going to kill M.Q. Although she could see his motorcycle in the parking lot, he claimed she stole it and sold it to someone, who replaced it with a different bike. He said the substituted bike didn't work, and she "owe[d] him a bike."

Appellant ingested methamphetamine in the room.

At about 8:00 p.m., he spoke to a woman on the telephone and was angry to learn that a drug deal was cancelled. He then insisted that M.Q. accompany him in her car to purchase drugs.

For two hours, appellant and M.Q. sat in her car in the motel parking lot. He continued to punch and spray her resulting in her clothes becoming wet. Appellant refused her request to open the windows because he "wanted [her] to feel not being able to breathe."

From about 11:00 p.m. until about 9:00 the next morning, appellant drove M.Q.'s car while she sat in the passenger seat. He continued to punch and spray her with pepper spray and glass cleaner. He told M.Q. she needed to withdraw $3,000 from the bank to pay for a new bike. She replied that she could not withdraw $3000 from the ATM and needed to go inside the bank. She knew she had no money in her account. At about 9:00 a.m., they returned to the motel room and waited for the bank to open. While waiting, he continued punching her face.

At about 10:00 a.m., appellant drove M.Q.'s car to a park. He made her follow him in his truck. He became angry that she did not park his truck correctly and bit her face, drawing blood.

Appellant retrieved his bike from the motel and rode to the bank with M.Q. sitting behind him. When they went inside the bank, she lifted her sunglasses to show the teller her black eye and asked her to call the police. Police responded and arrested appellant.

M.Q.'s cheek bone was fractured. She had a closed head injury, swelling around her scalp and eye, and a bite mark on her face.

### The Verdict and Sentencing

The jury acquitted appellant of kidnapping (count 1), but found him guilty of the lesser included offense of false imprisonment by violence or menace. (§§ 236, 237, subd. (a).) He was also acquitted of attempted robbery (count 2). (§§ 664, 211). The jury found appellant guilty of count 3, inflicting corporal injury (count 3). (§ 273.5, subd. (a).) The trial court dismissed the great bodily injury allegation as to count 3 after the jury was unable to reach a verdict on this allegation.

Appellant admitted he had suffered a prior strike conviction for attempted carjacking (§§ 664, 215).

The trial court denied appellant's request to dismiss the prior strike conviction and place him on probation. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) The court found that appellant committed divisible acts of false imprisonment and domestic violence and, consequently, denied his request to stay sentencing on count 1 pursuant to section 654. The court also denied the defense request to impose concurrent sentences on counts 1 and 3. The court imposed the middle term of three years on count 3, doubled for the prior strike, plus a consecutive eight months on count 1 (one-third the middle term), doubled to 16 months, for a total prison sentence of seven years and four months. The court also issued a criminal protective order against appellant for ten years.

### Multiple Punishment

Appellant contends his consecutive sentence for false imprisonment is barred by section 654 and must be stayed. This contention lacks merit.

"An act or omission that is punishable in different ways by different provisions of law" shall not "be punished under

4

more than one provision." (§ 654, subd. (a).) A "course of conduct encompassing several acts" may result in multiple punishment if it reflects "multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).) "If . . . defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

When the facts are undisputed, the application of section 654 is a question of law we review de novo. (*Corpening, supra*, 2 Cal.5th at p. 312.) The trial court has "broad latitude" to determine whether section 654 is factually applicable to a series of offenses. (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Substantial evidence supports the trial court's finding of multiple objectives. Appellant inflicted corporal injury to inflict pain on a former girlfriend. His laughter supported the conclusion he beat her for the purpose of amusement. He falsely imprisoned her in order to obtain money at her bank.

The trial court concluded that the offenses did not come within section 654 because it was not "an ongoing singular continuous course of conduct" but was divisible in time with breaks in the conduct. Several hours passed between appellant's initial assault of M.Q. in the motel room and her false imprisonment to accompany appellant in his quest to purchase

5

drugs and withdraw money from her account. Multiple punishment was thus permitted because the acts "were separated by periods of time during which reflection was possible." (*People v. Surdi* (1995) 35 Cal.App.4th 685, 689 [punishment for kidnapping and mayhem not barred by § 654]; *People v. Louie* (2012) 203 Cal.App.4th 388, 399 [15-minute gap between threats and arson].) Section 654 did not bar punishment for both crimes.[2]

### *Romero Motion*

Appellant contends the trial court abused its discretion in declining to strike his prior strike conviction in the interests of justice pursuant to *Romero, supra,* 13 Cal.4th 497. We disagree.

A trial court has discretion to dismiss a prior violent or serious felony conviction pursuant to the Three Strikes law. (*Romero, supra,* 13 Cal.4th at p. 504.) In deciding whether to grant a *Romero* motion, the trial court must "'consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 377

---

[2] The parties submitted supplemental briefs regarding the effect of Assembly Bill No. 518 (2021-2022 Reg. Sess.) on appellant's sentence. Because the trial court did not stay imposition of sentencing on count 1 and we affirm that determination, AB 518 has no application to this appeal.

(*Carmony*), quoting *People v. Williams* (1998) 17 Cal.4th 148, 161.)

Trial court rulings on *Romero* motions are reviewed under the deferential abuse of discretion standard. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Here, the trial court's ruling was not irrational or arbitrary. The court, in great detail, explained the reasons for denying the *Romero* motion. It acknowledged that the strike was 19 years old, but noted it was a "serious offense." The court stated that appellant has "a long and continuous criminal history." Indeed, according to the probation report, appellant's criminal history spans nearly thirty years, from 1991 through 2020, and includes four prior prison commitments and multiple failures on probation. After he committed the current offenses, he was charged with additional and numerous offenses including a battery with serious bodily injury.

The current crimes were serious. Appellant sadistically terrorized M.Q. for two days, during which he repeatedly beat her and sprayed her with pepper spray. He threatened to kill her, bit her face, and hit her with such force that it fractured her cheek bone.

The prior strike for attempted carjacking (§§ 664, 215, subd. (a)), committed in 2001, was also serious. There, appellant and two others attacked a man in a parking lot. Appellant then grabbed a woman and attempted to take her car keys. He was sentenced to prison for four years, six months.

Appellant's thirty-year criminal record includes domestic violence committed against two former girlfriends,

assault with a deadly weapon, resisting arrest, and violations of probation and parole.  He has additional prison commitments in 2010 for receiving stolen property, and in 2012 and 2014 for evading peace officers with willful or wanton disregard for the safety of others.  He was released on parole just seven months before committing the current offenses, and was on post-release community supervision when the offenses occurred.  Appellant's conduct in pretrial custody shows that he has little regard for rules:  multiple possession of altered razor blades, multiple possession of contraband, multiple batteries on fellow inmates, multiple failures to obey a directive, as well as lesser jail infractions.

In a *Romero* motion, a trial court may consider the age of the prior offenses.  (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1141 (*Avila*).)  But remoteness in time is an insufficient basis to dismiss the strike here because appellant did not have "a crime-free cleansing period of rehabilitation" but instead "led a continuous life of crime after the prior."  (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 (*Humphrey*) [reversing dismissal of 20-year-old strike]; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749-750 [strikes 24, 15, and 10 years old properly imposed].)

*Avila*, *supra*, 57 Cal.App.5th 1134, relied upon by appellant, does not compel a different result.  The prior offenses there were committed 26 to 28 years earlier, when the defendant was under the age of 21, and he committed only minor offenses in the seven years before the current offenses.  (*Id.* at pp. 1141, 1143.)  In contrast, appellant was sentenced to prison three times after committing his strike offense, and reoffended each time shortly after his release.  In light of appellant's continuing criminal conduct, "there is simply nothing mitigating" about the

age of his prior strike.  (*Humphrey*, *supra*, 58 Cal.App.4th at p. 813.)

Appellant contends the trial court failed to properly consider his mental health and substance abuse issues.  There is a presumption that the trial court considered all relevant factors, even if it did not mention them all.  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  And here, the record shows that the trial court did consider appellant's life-long history including his mental health history and drug history.

Nor is relief warranted by *People v. Garcia* (1999) 20 Cal.4th 490, also cited by appellant.  There, the trial court dismissed strikes because "defendant's prior convictions all arose from a single period of aberrant behavior for which he served a single prison term . . . and his criminal history does not include any actual violence."  (*Id*. at p. 503.)  Appellant's criminal record includes violent crimes that spanned decades.

### *Senate Bill No. 567 – Consideration of Trauma*

During the pendency of this appeal, Senate Bill No. 567 (2021-2022 Reg. Sess.) (S.B. 567), was enacted.  It amended section 1170, effective January 1, 2022 (Stats. 2021, ch. 731, § 1.3).  We asked for and received supplemental briefing on the applicability, if any, of S.B. 567 to appellant's sentence, and the standard for determining whether a remand is necessary.

When appellant was sentenced, section 1170, subdivision (b), gave the trial court discretion to choose whether to impose the lower, middle, or upper prison term in the interest of justice.  S.B. 567 added subdivision (b)(6) to section 1170 to require that the trial court select the low term if, among other things, the defendant "has experienced psychological, physical, or childhood trauma" that was a contributing factor in the

9

commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the low term would be contrary to the interests of justice."  (§ 1170, subd. (b)(6)(A)-(B).)

The Attorney General concedes that S.B. 567 qualifies as an ameliorative change in the law applicable to all nonfinal convictions on appeal.  (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 306-308, citing *In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Flores* (2022) 75 Cal.App.5th 495, 500 (*Flores*), depublication and review denied (June 15, 2022).)

Appellant contends he must be resentenced pursuant to the amended statute because the trial court did not exercise an "informed discretion" in selecting the middle term.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)  The Attorney General disagrees.  We agree with the Attorney General that remand for resentencing is not here required.

The California Constitution admonishes our appellate judiciary not to reverse any trial court judgment unless there has been a miscarriage of justice.  There should only be a reversal where it is reasonably probable that a more favorable outcome will result upon reversal.  (Cal. Const. art. VI, § 13; *People v. Watson* (l956) 46 Cal.2d 818, 836; but see p. 13, *post*, [proof beyond a reasonable doubt standard for an aggravating sentencing factor].)  This rule, or its precursors, have been with us since statehood.  By its enactment of S.B. 567, the Legislature did not purport to, and could not, by statute, alter the California Constitution.

We apply the standard set forth in *Gutierrez, supra,* 58 Cal.4th 1354, to determine whether a remand is required for resentencing under the new legislation.  "'Defendants are entitled

10

to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*Id*. at p. 1391.)

At sentencing, the trial court considered the defense sentencing memorandum, the People's statement in aggravation, and the probation report. Appellant has a history of mental illness, has previously been diagnosed with Paranoid Schizophrenia, and suffers from auditory hallucinations. His sentencing memoranda suggested he had experienced "trauma," including a difficult childhood, the "devastating" death of his parents when he was 38 and 40 years old, he was beaten and stabbed in prison, and that mental illness and chemical dependency may have played a role in the commission of the offenses." His lengthy sentencing memorandum brought to the trial court all of these matters which appellant characterized as "mitigating."

We apply the California state constitutional mandate. There are several reasons for our opinion that there has been no miscarriage of justice here.

First, the probation report identified multiple aggravating factors, including one admitted by appellant (the prior strike conviction) and one found true by the jury (the

11

finding of violence on count 1).  (See California Rules of Court, rule 4.421(b); 1170, subd. (b)(6).)

Second, the trial court denied appellant's *Romero* motion and request for probation, highlighting his continuous 30-year criminal history and the fact that he continued to commit crimes after his arrest in this case.  This was appellant's fifth commitment to state prison since 2001.  He committed the current offenses less than one year after being released on parole.  While on local supervision, he failed to comply with probation multiple times.  In denying the *Romero* motion, the trial court necessarily found that appellant was not outside the spirit of the Three Strikes Law and continued to pose a danger to the public.

Third, the trial court denied appellant's request to impose concurrent sentences, stating:  "Based on everything I've said, I'm not going to do that.  I'm going to make them consecutive."  The imposition of consecutive sentences shows the court's reluctance to impose the lower term.

Fourth, the current offenses were aggravated, sadistic, and extended over the course of 20 hours.  This was akin to torture.

Fifth, the trial court imposed a criminal protective order against defendant to protect the victim in this case for the maximum period of ten years.  The probation report showed that appellant had a record of violence against other women.

We conclude the record "clearly indicates" the trial court would not have imposed the low term had it been aware of its discretion to do so under S.B. 567.  (*Gutierrez, supra,* 58 Cal.4th at p. 1391.)  Remand for resentencing would be an idle

act.[3] The offenses committed by appellant in this case were horrendous. For what appellant did over the course of two days, an aggregate unstayed sentence of seven years and four months is lenient. He could have easily been sentenced to the upper term. As a matter of law, (1) the aggravating circumstances are overwhelming and outweigh any theoretical mitigating circumstances, and (2) selection of the low term would be "contrary to the interests of justice."

Appellant also relies upon the rule of "lenity" (*People v. Jones* (2001) 25 Cal.4th 98, 107), arguing he is entitled to the benefit of the newly enacted statute. This argument, like the ones preceding it, is not persuasive here. It does not "trump" the duty of an appellate court to follow the California Constitutional mandate to only reverse where there is a miscarriage of justice.

### *The Flores Cue*

Nevertheless, appellant insists the trial court's failure to apply the new statute cannot be deemed "harmless error." He points out two recent court of appeal opinions that reached differing conclusions as to whether remand for resentencing is required under S.B. 567. (Compare *People v. Lopez* (2022) 78 Cal.App.5th 459 (review pending, S274856) [remand for resentencing required, concluding any error was not harmless] with *Flores*, *supra,* 75 Cal.App.5th 495 (review den. June 15, 2022, request for depublication denied) [remand for resentencing not required, concluding any error was harmless].) *Lopez*, *supra,* is factually distinguishable and even it recognizes

---

**3** We, ourselves, have applied the "clear indication" rule and reversed to allow a resentencing where the standard had not, in our opinion, been met. (*People v. Yanaga* (2020) 58 Cal.App.5th 619, 628.)

that this type of sentencing error is subject to a harmless error analysis. The Attorney General relies on *Flores,* arguing that any error is harmless. The Supreme Court's order of June 15, 2022, denying the request for depublication and review is a cue that *Flores* is the standard governing appellate review.

We also observe that the California Supreme Court precedents cited in *Flores* dictate affirmance. (*People v. Sandoval* (2007) 41 Cal.4th 825, 839 ["if a reviewing court concludes, beyond a reasonable doubt, that a jury, applying the beyond-a-reasonable-doubt-standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the [error is] harmless"]; see also *People v. Black* (2007) 41 Cal.4th 799, 813.) These precedents are not "fairly distinguishable" in the presenting case, are binding upon us, and we follow them. (*People v. Triggs* (1973) 8 Cal.3d. 884, 891, disapproved on other grounds in *People v. Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4.)

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.



YEGAN, Acting P. J.


I concur:



PERREN, J.


14

TANGEMAN, J., Concurring and Dissenting:

I concur in the opinion insofar as it affirms the consecutive sentence for count 1 and the denial of the Romero[1] motion. But I dissent from the denial of appellant's request for a remand for resentencing pursuant to Senate Bill No. 567.

As the majority acknowledges, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) added subdivision (b)(6) to Penal Code section 1170 to require that the sentencing court select the low term under the factual circumstances appellant contends exist here, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (Stats. 2021, ch. 731, § 1.3, italics added.) The amendment applies to appellant's case because it potentially reduces the punishment. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303-304; *People v. Banner* (2022) 77 Cal.App.5th 226, 240.)

Because Senate Bill 567 was not enacted until after sentencing, the sentencing court had no opportunity to consider this new requirement or the necessary findings to overcome it. As the majority recognizes, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

That showing has not been made here. The record does not establish that the trial court would have found trauma was not a contributing factor. For example, in discussing appellant's criminal history, the trial court noted that "a lot of it

---

[1] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

1

may be because of suffering from your father's death, and . . . your mother's death." Nor is the record clear that the court would have found "the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (Pen. Code, § 1170, subd. (b)(6).) By selecting the middle term, the trial court impliedly found the aggravating factors were not sufficient to warrant imposition of the high term. (Pen. Code, § 1170, subd. (b)(2) (former subd. (b).) Accordingly, a remand for full resentencing is warranted. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

It is true that the trial court understood that it had the discretion to sentence appellant within the sentencing triad. But it was unaware of the subsequently enacted changes in Senate Bill 567 which further defined and limited its discretion. Thus, this case is like those that remanded for resentencing where "the trial courts . . . understood that they had some discretion in sentencing, [but] the records do not clearly indicate that they would have imposed the same sentence had they been aware of the full scope of their discretion." (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391.)

The majority's approach of substituting its judgment for that of the trial court contravenes our Supreme Court's holding that remand is required "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391.) The court below made no such pronouncements. We depart from our duties as a court of review when we unilaterally conclude that some crimes are sufficiently "horrendous," or some sentences so

2

"lenient," that any lesser sentence would be "contrary to the interests of justice" "[a]s a matter of law."  (Italics added.) I would remand to the trial court to exercise its discretion based on  the intervening legislative directives.[2]

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

---

[2] The majority discusses a split of authority regarding Senate Bill 567, but those cases involve a different provision regarding factors in aggravation to impose the high term. (Pen. Code, § 1170, subd. (b)(2).)  That provision implicates the Sixth  Amendment right to a jury determination of facts that increase  the statutory maximum, an issue that is not involved in this  middle  term  case.  (*Cunningham  v. California* (2007) 549 U.S. 270; see *People v. Flores* (June 15, 2022, S274232 [2022 Cal. Lexis 3127, 2022 WL 2159020] (conc. statement by Liu, J., on den. of review).)  The majority relies upon *People v. Flores* (2022) 75 Cal.App.5th 495, which ruled that the failure of the jury to find  aggravating factors was harmless because the appellate court was "satisfied, beyond a reasonable doubt, the jury would have found true at least one aggravating circumstance." (*Id*. at p. 501.)  The court there did not discuss remand to determine if the  trial court would have exercised its discretion differently. In *People v. Lopez* (2022) 78 Cal.App.5th 459, 467-468, the appellate  court was unwilling to affirm a high term sentence based on "a  single permissible aggravating factor" because the record did not  "clearly indicate" the trial court would have made the same  decision without considering the other factors.  (See *People v. Sandoval* (2007) 41 Cal.4th 825 [reliance on unproven  aggravating factors not harmless error].)

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Bases & Bases, Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Snr. Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.